IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRIMET ROTH and ARNOLD ROTH,

                Plaintiffs,

-against-

UNITED STATE DEPARTMENT OF STATE,

                Defendant.

Case No.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Frimet and Arnold Roth (the "Roths"), by their undersigned counsel, respectfully bring this action against Defendant the United States Department of State (the "State Department"). In support thereof, the Roths respectfully allege as follows:

**INTRODUCTION**

1. The Roths bring this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive and other appropriate relief requiring the State Department to respond to their August 7, 2020 request, pursuant to FOIA (the "FOIA Request"), for certain "Records," within the meaning of FOIA. The Records relate to the the bilateral extradition treaty between the U.S. and the Hashemite Kingdom of Jordan ("Jordan"), pursuant to which the U.S. has requested that Jordan extradite Ahlam Aref Ahmad al-Tamimi ("Tamimi"), an officially designated "FBI Most Wanted Terrorist," to stand trial for the murder of their 15 year-old daughter, Malka Chana Roth, and another U.S. national, Judith Hayman Greenbaum.

2. The Roths submitted the FOIA Request to the State Department on August 7, 2020. Other than acknowledging that it had received the FOIA Request, and despite follow-up

inquries, the State Department has not provided any substantive response to the FOIA Request nor has it indicated when a response will be forthcoming. A true and correct copy of the FOIA Request is attached hereto as Exhibit A.

3. In violation of FOIA, the State Department has constructively denied the FOIA Request by failing to respond to it within the statutory deadline. Although the Roths recognize the COVID-19 pandemic explains some delay in responding to the FOIA Request, it does not explain the more than three month delay in providing the Roths with a statement of the scope of the documents the agency will produce or any timeline for doing so. The Roths thus seek the intervention of this Court in order to compel the State Department to comply with its obligations under FOIA.

## PARTIES

4. Plaintiffs, the Roths, are the parents of Malka Chana Roth. Malka, a U.S. national, was murdered in the August 9, 2001 terrorist bombing of the Sbarro Pizzeria in Jerusalem (the "Sbarro Attack"). Via counsel, they submitted the FOIA Request to the State Department.

5. Defendant, the State Department, is an agency within the meaning of 5 U.S.C. § 552(f)(1). Upon information and belief, the State Department has possession and control of the Records requested in the FOIA Request.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), (a)(6)(C)(i), & (a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

## BACKGROUND

### I.     The Sbarro Attack

8.     On August 9, 2001, Tamimi implemented her plan to kill as many Jewish children as possible by delivering a suicide bomber to the Sbarro Pizzeria in central Jerusalem during the busy lunch hour.  The bomber entered the restaurant and detonated his guitar case filled with explosives encased in shrapnel (nails).  Tamimi fled from the scene minutes before the explosion and hurried back to a television studio in Ramallah where she worked as a news presenter and that evening actually read the news of the attack she herself had orchestrated while giving no hint of her involvement.

9.     The explosion was devastating.  It instantaneously erased the lives of 15 people, including eight children.  A sixteenth victim, a young mother who is also a U.S. national, has remained in a vegetative state ever since.  Approximately 130 people were wounded, many grievously.

10.    In addition to Malka Chana Roth, another U.S. national was murdered in the attack, Judith Hayman Greenbaum (who was five months pregnant), thus justifying prosecution under U.S. antiterrorism law, as described below.

11.    Israeli authorities arrested Tamimi on September 14, 2001.  On October 23, 2003, an Israeli court convicted her for her role in the attack and sentenced her to sixteen consecutive life terms in prison.

12.    At her trial, Tamimi admitted her role in the attack and she has also subsequently spoken with pride and satisfaction of what she did.  For example:

**Interviewer**: If you could go back in time, would you carry out such a large-scale attack?

**Ahlam Tamimi**: Of course. I do not regret what happened. Absolutely not. This is the path. I dedicated myself to Jihad for the sake of Allah, and Allah granted me success. You know how many casualties there were [in the 2001 attack on the Sbarro pizzeria].

This was made possible by Allah. Do you want me to denounce what I did? That's out of the question. I would do it again today, and in the same manner.[1]

## II.     Extradition Attempts

13.     In 2011, Israel released Tamnini (and 1,026 additional convicted terrorists) as part of an extortionate prisoner exhange for Gilad Shalit, an Israeli soldier whom Hamas had kidnapped in 2006 and held hostage.

14.     Following her release, Tamimi returned to her native Jordan, where she was received as a hero, including becoming the host of a weekly satellite television program via the Al Quds TV network operated by Hamas.  Her central role in the program, which encouraged support for terrorists inside the Israeli penal system and at large, continued until September 2016.

15.     On July 15, 2013, the United States Department of Justice ("DOJ") filed under seal a criminal complaint (the "Complaint") against Tamimi for violation of 18 U.S.C. §§ 2332a(a)(1) and (2), arising out of her role in the Sbarro Attack.  This provision accords jurisdiction to the U.S. to prosecute the murder of U.S. nationals abroad when carried out by means of a weapon of mass destruction, for which the Sbarro Attack qualified.  Upon information and belief, the U.S. thereupon requested via confidential channels and with no media coverage that Jordan extradite Tamimi to the U.S. (the "Extradition Request"), pursuant to the terms of the bilateral extradition treaty between the U.S. and Jordan, executed on or about March 28, 1995, and entered into force on or about July 29, 1995 (the "Treaty").  Jordan, however,

---

[1] *Released Terrorist Ahlam Tamimi, Sentenced to 16 Life Terms in Prison, Takes Pride in the Number of Casualties She Caused and Proclaims: I Would Do It Again Today*, MEMRI (Oct. 19, 2011), https://www.memri.org/tv/released-terrorist-ahlam-tamimi-sentenced-16-life-terms-prison-takes-pride-number-casualties-she.

4

repeatedly refused to turn her over.  On March 14, 2017, the U.S. unsealed the Complaint and designated Tamimi an FBI Most Wanted Terrorist.[2]

16.    In refusing to comply with the Extradition Request, Jordan has asserted that the Treaty is not effective.  On March 21, 2017, just seven days after DOJ unsealed the Complaint, Jordan's Court of Cassation ruled that the Treaty was unenforceable solely on the basis that Jordan's parliament had not ratified it and therefore ruled against the Extradition Request.  It has otherwise been widely reported that Jordan has thwarted the U.S. request to extradite Tamimi by failing to implement the necessary measures to ratify the Treaty, which, upon information and belief, could have been done at any time in the years since the Treaty was signed.

17.    The U.S. rejects Jordan's position that the Treaty is not in effect.  In its authoritative publication, "Treaties in Force," the State Department has listed the Treaty as in force throughout the years since its execution.[3] Similarly, in its "Country Reports on Terrorism 2019 - Jordan, US Department of State," the State Department states, "The United States regards the extradition treaty with Jordan as valid and in force."[4]

18.    In direct communications with the Roths, the State Department has confirmed that the Treaty is in effect and that the State Department is in possession of the underlying instruments of ratification that, upon information and belief, document that both the U.S. and Jordan fulfilled their respective domestic legal requirements to effectuate the Treaty (the "Instruments of Ratification").[5]

---

[2] Complaint, USA v. Ahmad Al-Tamimi, No. 1:13-mj-00580-DAR-1, (D.D.C. July 15, 2013), available at, https://www.investigativeproject.org/documents/case_docs/3258.pdf.

[3] U.S. DEP'T OF ST., TREATIES IN FORCE 245 (JAN. 1, 2020), https://www.state.gov/treaties-in-force/).

[4] U.S. DEP'T OF ST., COUNTRY REPORTS ON TERRORISM 2019: JORDAN, https://www.state.gov/reports/country-reports-on-terrorism-2019/jordan/ (last visited Dec. 12, 2020).

[5] See Vienna Convention on the Laws of Treaties arts. 14, 16, May 23, 1969, 1155 U.N.T.S. 331; see also Glossary of terms relating to Treaty actions, UNITED NATIONS TREATY COLLECTION, https://treaties.un.org/pages/overview.aspx?path=overview/glossary/page1_en.xml#ratification (last visited Dec. 21, 2020).

19. By e-mail dated June 3, 2019, a State Department representative informed the Roths that,

> To date, the Government of Jordan has been unwilling to accede to our requests [to extradite Tamimi] because they have claimed the bilateral extradition treaty we signed in 1995 is null. We continue to dispute the Jordanian government's claim, as we exchanged instruments of ratification, bringing the treaty into force on July 29, 1995, and the treaty has not been terminated.

20. Threafter, in response to the Roths' request for a copy of the Instruments of Ratification, by e-mail dated January 24, 2020, a State Department representative informed the Roths that

> I was able to verify that the documents you requested are not public. However, you may request them under the Freedom of Information Act (FOIA). The link to file a FOIA request online is: https://foia.state.gov/Request/Submit.aspx.

21. On August 7, 2020, the Roths submitted the FOIA Request to the State Department. Nonetheless, and despite the State Department's confirmation that the Instruments of Ratification exist and that the Roths could request them under FOIA, the State Department has not provided a substantive response to the FOIA Request.

22. The Roths have dedicated themselves to seeking justice for their murdered child. They have engaged in private discussions and communications with government officals and embarked upon a broad public relations effort, by means of speaking engagements, media interviews, publication of op-eds, social media postings and active blog postings to raise public awarneness regarding Jordan's continued harboring of this FBI Most Wanted Terrorist, in derogation of the Extradition Request. The Instruments of Ratification are an important component of the Roths' efforts. They contradict Jordan's proferred excuse for avoiding its treaty obligations and for refusing to turn Tamimi over over to U.S. law enforcement, as the law and, moreover, the most basic principles of decency require.

### III.     The FOIA Request

23.     On August 7, 2020 the Roths submitted the FOIA Request to the State Department. The FOIA Request seeks the following Records (*see* Exhibit A at 2-3):

    A.    All records or other documents or communications constituting or relating to the exchange of Instruments of Ratification between the U.S. and Jordan relating to the Treaty.

    B.    All records or other documents or communications constituting or relating to any proposed or actual presidential proclamation and/or Executive Order declaring the Treaty to be in force.

    C.    All records or other documents or communications constituting or relating to any diplomatic notes or other communications from Jordan with respect to Jordan's internal procedures with respect to bringing the Treaty into force.

    D.    All records or other documents or communications constituting or relating to the Extradition Request, including intra-U.S. government communications as well as communications between the U.S. government and Jordan with respect thereto.

    E.    All records or other documents or communications constituting or relating to Jordan's refusal to comply with the Extradition Request, including intra-U.S. government communications as well as communications between the U.S. government and Jordan with respect thereto.

    F.    All records or other documents or communications relating to (a) Jordan's Court of Cassation's decision, on or about March 20, 2017, that the Treaty

7

is invalid under Jordanian constitutional law, including intra-U.S. government communications as well as communications between the U.S. government and Jordan; and (b) any prior ruling by a Jordanian court (including without limitation in 1996) regarding the validity or effectiveness of the Treaty.

G.   All records or other documents or communications relating to any statement by or communication from Jordan regarding whether the Treaty is in force, including intra-U.S. government communications as well as communications between the U.S. government and Jordan.

H.   All records or other documents or communications relating to (a) the inclusion of the Treaty in Treaties in Force, and (b) the statement in DOS's "Country Reports on Terrorism 2019: Jordan" that, in the context of noting the Extradition Refusal, "The United States regards the extradition treaty with Jordan as valid and in force."

I.   All records or other documents or communications relating to any instances where the Treaty has (a) been applied or utilized or (b) not applied or utilized with respect to the extradition, transfer or rendition of persons from Jordan to the U.S., other than Tamimi, including but not limited to Eyad Ismoil (a/k/a Iyad Isama'il Al-Najim); Mohammad Zaki Amawi; and Nader Saadeh.

**IV.     The State Department's Constructive Denial of the FOIA Request**

24.     On August 11, 2020, the State Department acknowledged receipt of the FOIA Request and assigned it FOIA Control number F-2020-07550 (the "Acknowledgement"). A true and correct copy of the Acknowledgement, is attached hereto as Exhibit B.

25.     Having received no further response, on October 5, 2020, the Roths' counsel emailed the State Department's FOIA office requesting an update on the status of the FOIA Request. A true and correct copy of the email is attached hereto as Exhibit C.

26.     On October 6, 2020, a State Department FOIA representative emailed the Roths' counsel stating that due to the COVID-19 pandemic the State Department is experiencing delays in their ability to process documents in response to FOIA requests. A true and correct copy of the email is attached hereto as Exhibit D.

27.     On November 19, 2020, the Roths' counsel emailed the State Department noting the dislocation caused by the pandemic but nonethless asking for an update on the status of the FOIA Request. *See* Exhibit D.  Beyond an "auto reply," no reply to this e-mail has been received.

28.     To date, the State Department has not produced any Records responsive to the FOIA Request.

29.     To date, the State Department has not informed the Roths as to the scope of the Records the agency will produce, if any, in response to the FOIA Request.

30.     To date, the State Department has not informed the Roths as to the scope of responsive records that the agency will withhold pursuant to any FOIA exemptions or exclusions.

31. To date, the State Department has not informed the Roths when the agency projects to provide any substantive response to the FOIA Request.

32. By virtue of the foregoing, the State Department has constructively denied the FOIA Request.

**CLAIM FOR RELIEF**

**COUNT I**
**Declaratory and Injunctive Relief:**
**Constructive Denial of Request in Violation of FOIA, 5 U.S.C. § 552**

33. The Roths re-allege and incorporate by reference all previous paragraphs as if fully set forth herein.

34. FOIA provides this Court with "jurisdiction to enjoin [the State Department] from withholding agency records and to order the production of any agency records improperly withheld from [the Roths]." 5 U.S.C. § 552(a)(4)(B).

35. The requested documents are "agency records" within the State Department's control.

36. FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify a requester of, *inter alia*, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

37. The State Department received the FOIA Request on August 10, 2020. *See* Exhibits B and D.

38. Pursuant to FOIA, the State Department was required to respond to the FOIA Request by August 31, 2020. 5 U.S.C. § 552(a)(6)(B)(i).

39. As of the date of this filing, however, the State Department has not made and communicated to the Roths a "determination" on the FOIA Request within the meaning of 5 U.S.C. § 552(a)(6)(A)(i).

40. There is no basis under FOIA to withhold, in whole or in part, the Records requested by the Roths. The State Department has wrongfully withheld Records in violation of FOIA.

## **REQUEST FOR RELIEF**

WHEREFORE, the Roths respectfully requests that this Court:

    A. Declare the State Department's constructive denial of the FOIA Request to violate FOIA;

    B. Enter an injunction, pursuant to 5 U.S.C. § 552(a)(6)(E)(iii), directing the State Department to process the FOIA Request as soon as practicable;

    C. Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), directing the State Department to make all requested records available to the Roths, and setting a deadline for compliance;

    D. Provide for expeditious proceedings in this action;

    E. Award the Roths its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

  F. Grant such other and further relief as the Court may deem just and proper.

Dated:  December 29, 2020  Respectfully submitted,

  PROSKAUER ROSE LLP

  /s/  *Guy Brenner*
  Guy Brenner
  D.C. Bar #491964
  1001 Pennsylvania Avenue, NW
  Suite 600 South
  Washington, DC 20004-2533
  d 202.416.6830
  f 202.416.6899
  gbrenner@proskauer.com


  PROSKAUER ROSE LLP
  Gregg M. Mashberg*
  Peter Fishkind*
  11 Times Square
  New York, NY 10036
  d 212.969.3450
  f  212.969.2900
  gmashberg@proskauer.com
  pfishkind@proskauer.com

  *Attorneys for Frimet Roth and Arnold Roth*


  THE LAWFARE PROJECT
  Ziporah Reich*
  633 Third Ave. 21st Fl.
  New York, NY 10017
  d 212.339.6995
  ziporah@TheLawfareProj.org

  *Attorneys for Frimet Roth and Arnold Roth*

*pro hac vice applications forthcoming