UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FRIMET ROTH, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>DEPARTMENT OF STATE,<br><br>      Defendant. | Civil Action No. 20-3838 (ABJ) |

**MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Background ........................................................................................................................... 1

Legal Standard ..................................................................................................................... 3

Argument .............................................................................................................................. 5

    I.    The Department Properly Withheld Records and Information Pursuant to FOIA Exemption 1. ................................................................................................ 7

    II.    The Department Properly Withheld Records and Information Pursuant to FOIA Exemption 5. .............................................................................................. 10

        A.    The Withheld Information Is Both Intra-Agency and Inter-Agency Communication Protected by FOIA Exemption 5 ................................... 11

        B.    The Withheld Information Is Covered by the Deliberative Process Privilege as Predecisional ......................................................................... 12

        C.    The Withheld Information Is Covered by the Deliberative Process Privilege as Deliberative ........................................................................... 14

        D.    The Withheld Information is Covered by the Attorney Client Privilege .. 15

        E.    The Withheld Information is Covered by the Attorney Work Product Privilege ..................................................................................................... 16

    III.    The Defendant Properly Withheld Records and Information Pursuant to FOIA Exemption 7. .............................................................................................. 18

        A.    Threshold Requirements of Exemption 7 ................................................. 18

        B.    The Defendant Properly Withheld Pursuant to Exemption 7(A) ............. 20

    IV.    Foreseeable Harm. ........................................................................................... 21

    V.    The Department has Satisfied its Obligation to Segregate and Release Non-Exempt Information. ..................................................................................... 25

Conclusion .......................................................................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

Cases

*Access Reps. v. United States Dep't of Justice*,
  926 F.2d 1192 (D.C. Cir. 1991) ........................................................................... 13, 22, 24
*ACLU v. Dep't of Def.*,
  628 F.3d 612 (D.C. Cir. 2011) ............................................................................................ 7
*Agrama v. IRS*,
  282 F. Supp. 3d 264 (D.D.C. 2017) ................................................................................. 24
*Am. Ctr. For Law & Justice v. U.S. Dep't of Justice*,
  325 F. Supp. 3d 162 (D.D.C. 2018) ................................................................................... 1
*Amiri v. Nat'l Sci. Found.*,
  664 F. Supp. 3d 1 (D.D.C. 2021) ..................................................................................... 23
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)a ......................................................................................................... 3
*Banks v. Dep't of Just.*,
  538 F. Supp. 2d 228 (D.D.C. 2008) ................................................................................. 18
*Blackwell v. FBI*,
  680 F. Supp. 2d 79 (D.D.C. 2010) ................................................................................... 20
*Boyd v. Crim. Div. of U.S. Dep't of Just.*,
  475 F.3d 381 (D.C. Cir. 2007) ......................................................................................... 25
*Brayton v. Off. of U.S. Trade Rep.*,
  641 F.3d 521 (D.C. Cir. 2011) ........................................................................................... 3
*Cause of Action Inst. v. U.S. Dep't of Com.*,
  513 F. Supp. 3d 116 (D.D.C. 2021) ................................................................................. 12
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................... 3
*Citizens for Responsibility & Ethics in Wash.* ("*CREW*") *v. Dep't of Labor*,
  478 F. Supp. 2d 77 (D.D.C. 2007) ................................................................................. 4, 5
*Clemente v. Fed. Bureau of Investigation*,
  Civ. A. No. 20-1527 (TNM), 2022 WL 17092585 (D.D.C. Nov. 21, 2022) ................... 21
*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ............................................................................. 13, 15, 17
*Comm. For Freedom of the Press v. Fed. Bureau of Investigation*,
  3 F.4th 350 (2021) ..................................................................................................... 14, 21
*Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger*,
  502 F.2d 370 (D.C. Cir. 1974) ......................................................................................... 18
*Defenders of Wildlife v. U.S. Border Patrol*,
  623 F. Supp. 2d 83 (D.D.C. 2009) ..................................................................................... 3
*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ................................................................................................... 10, 11, 12
*Dep't of Justice v. Tax Analysts*,
  492 U.S. 136 (1989) ........................................................................................................... 4

*DiBacco v. U.S. Army,*
   795 F.3d 178 (D.C. Cir. 2015) ........................................................................... 7

*Donatos Sarras v. United States Dep't of Justice,*
   Civ. A. No. 19-0861 (CRC), 2021 WL 9909763 (D.D.C. Aug. 5, 2021) ............... 22

*Emuwa v. U.S. Dep't of Homeland Sec.,*
   Civ. A. No. 20-1756 (TNM), 2022 WL 1451430 (D.D.C. May 9, 2022) ............... 22

*Envtl. Prot. Agency v. Mink,*
   410 U.S. 73 (1973) ................................................................................... 10, 22

*Frontier Found. v. U.S. Dep't of Justice,*
   739 F.3d 1 (D.C. Cir. 2014) ............................................................................. 12

*Gallant v. NLRB,*
   26 F.3d 168 (D.C. Cir. 1994) ............................................................................ 5

*Ground Saucer Watch, Inc. v. Cent. Intelligence Agency,*
   692 F.2d 770 (D.C. Cir. 1981) .......................................................................... 4

*In re Sealed Case,*
   737 F.2d 94 (D.C. Cir. 1984) .......................................................................... 15

*Jefferson v. Dep't of Just.,*
   284 F.3d 172- (D.C. Cir. 2002) ...................................................................... 18

*Jud. Watch, Inc. v. Dep't of Homeland Sec.,*
   926 F. Supp. 2d 121 (D.D.C. 2013) ................................................................ 17

*Jud. Watch, Inc. v. Dep't of Just.,*
   432 F.3d 366 (D.C. Cir. 2005) ................................................................... 16, 17

*Jud. Watch, Inc. v. Dep't of Just.,*
   806 F. App'x 5 (D.C. Cir. 2020) ..................................................................... 17

*Jud. Watch, Inc. v. Dep't of Just.,*
   20 F.4th 49 (D.C. Cir. 2021) ........................................................................... 14

*Judicial Watch, Inc. v. Dep't of Def.,*
   857 F. Supp. 2d 44 (D.D.C. 2012) ................................................................... 8

*Judicial Watch, Inc. v. Dep't of Def.,*
   715 F.3d 937 (D.C. Cir. 2013) ...................................................................... 7, 8

*Judicial Watch, Inc. v. Dep't of State,*
   306 F. Supp. 3d 97 (D.D.C. 2018) .................................................................. 10

*Keys v. Dep't of Just.,*
   830 F.2d 337 (D.C. Cir. 1987) ....................................................................... 19

*Kishore v. Dep't of Just.,*
   575 F. Supp. 2d 243 (D.D.C. 2008) ................................................................ 17

*Krikorian v. Dep't of State,*
   984 F.2d 461 (D.C. Cir. 1993) ...................................................................... 7, 8

*Larson v. Dep't of State,*
   565 F.3d 857 (D.C. Cir. 2009) ......................................................................... 4

*Machado Amadis v. U.S. Dep't of State,*
   971 F.3d 364 (D.C. Cir. 2020) ........................................................... 11, 12, 14

*Mapother v. Dep't of Just.,*
   3 F.3d 1533 (D.C. Cir. 1993) ........................................................................ 20

*Martin v. Off. of Special Counsel,*
   819 F.2d 1181 (D.C. Cir. 1987) ..................................................................... 17

*McErlean v. Dep't of Just.*,
   Civ. A. No. 97-7831, 1999 WL 791680 (S.D.N.Y. Sept. 30, 1999)........................................ 18
*McGehee v. Cent. Intelligence Agency*,
   697 F.2d 1095 (D.C. Cir. 1983) ........................................................................................... 3
*Mead Data Cent., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ................................................................................. 4, 15, 24
*Media Research Ctr. v. Dep't of Justice*,
   818 F. Supp. 2d 131 (D.D.C. 2011) ................................................................................. 3, 4
*Mendoza v. DEA*,
   465 F. Supp. 2d 5 (D.D.C. 2006) ................................................................................... 20, 21
*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ........................................................................................... 4, 5
*Milner v. Dep't of Navy*,
   562 U.S. 562 (2011) ............................................................................................................ 10
*Nat'l Treasury Emps. Union v. U.S. Customs Serv.*,
   802 F.2d 525 (D.C. Cir. 1986) ............................................................................................. 4
*NLRB v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978) ............................................................................................................ 20
*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ............................................................................................. 10, 12, 13
*Nuclear Regulatory Comm'n*,
   216 F.3d 1180 (D.C. Cir. 2000) ........................................................................................... 4
*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) ............................................................................................. 5
*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
   976 F.2d 1429 (D.C. Cir. 1992) ................................................................................... 12, 23
*Pratt v. Webster*,
   673 F.2d 408 (D.C. Cir. 1982) ..................................................................................... 18, 19
*Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*,
   575 F. Supp. 3d 34 (D.D.C. 2021) ..................................................................................... 23
*Renegotiation Bd. v. Grumman Aircraft*,
   421 U.S. 168 (1975) ............................................................................................................ 12
*Reps. Comm. for Freedom of the Press v. CBP*,
   567 F. Supp. 3d 97 (D.D.C. 2021) ..................................................................................... 16
*Rosenberg v. Dep't. of Defense*,
   342 F. Supp. 3d 62 (D.D.C. 2018) ..................................................................................... 21
*SafeCard Servs., Inc. v. Sec. and Exch. Comm'n*,
   926 F.2d 1197 (D.C. Cir. 1991) ........................................................................................... 4
*Schoenman v. FBI*,
   573 F. Supp. 2d 119 (D.D.C. 2008) ................................................................................... 16
*Spirko v. U.S. Postal Serv.*,
   147 F.3d 992 (D.C. Cir. 1998) ............................................................................................. 5
*Summers v. Dep't of Just.*,
   140 F.3d 1077 (D.C. Cir. 1998) ......................................................................................... 25
*Swan v. SEC*,
   96 F.3d 498 (D.C. Cir. 1996) ............................................................................................. 20

*Tax Analysts v. IRS,*
   117 F.3d 607 (D.C. Cir. 1997) ........................................................................ 15, 16

*Tax Analysts v. IRS,*
   294 F.3d 71 (D.C. Cir. 2002) .............................................................................. 19

*United Stated Dep't of Justice v. Julian,*
   486 U.S. 1 n.1 (1988) .......................................................................................... 11

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.,*
   141 S. Ct. 777 (2021) ............................................................................ 10, 12, 13

*Vaughn v. Rosen,*
   484 F.2d 820 (D.C. Cir. 1973) ............................................................................. 4

*Vaughn v. Rosen,*
   523 F.2d 1136 (D.C. Cir. 1975) .......................................................................... 14

*Voinche v. FBI,*
   46 F. Supp. 2d 26 (D.D.C. 1999) ...................................................................... 20

*White v. Dep't of Just.,*
   952 F. Supp. 2d 213 (D.D.C. 2013) ................................................................... 17

*Wolf v. CIA,*
   473 F.3d 370 (D.C. Cir. 2007) .......................................................................... 7, 8

Statutes

5 U.S.C. § 552 ............................................................................................................. 1

5 U.S.C. § 552(a)(3)- 552(b) ..................................................................................... 10

5 U.S.C. § 552(a)(4)(B) .............................................................................................. 4

5 U.S.C. § 552(a)(8)(A)(i) ......................................................................................... 21

5 U.S.C. § 552(b) ............................................................................................. 4, 5, 24

5 U.S.C. § 552(b)(7) ................................................................................................. 18

5 U.S.C. § 552(b)(7)(A) ............................................................................................ 19

5 U.S.C. §§ 551(1) ..................................................................................................... 11

5 U.S.C. §§ 552(b)(1) .................................................................................................. 3

5 U.S.C. §§ 552(b)(5) .................................................................................... 3, 10, 11

Rules

Fed. R. Civ. P. 56(a) ................................................................................................... 3

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, Defendant the Department of State ("the Department") respectfully submits this memorandum in support of its motion for summary judgment in this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*, case.

Frimet and Arnold Roth ("Plaintiffs") bring this action against the Department pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of certain records related to the attempts to pursue the extradition of Ahlam Aref Ahmand Al-Tamimi ("Tamimi") to the United States from Jordan. Plaintiffs reported that, after reviewing information provided by the Department through counsel regarding the search for potentially responsive records, they are satisfied with the Department's search for records and do not wish to challenge the adequacy of the Department's search. The sole issue before the Court now is a subset of withholdings made by the Department.[1] Specifically, Plaintiffs challenge withholdings made under FOIA Exemptions 1, 5, and 7(a).

As explained below and in further detail in the accompanying Declaration of Department official Timothy Kootz (attached hereto as Exhibit A) and the Department's *Vaughn* Index (attached hereto as Exhibit B), the Department properly withheld certain information from Plaintiff pursuant to the FOIA Exemptions 1, 5, and 7(a).

## BACKGROUND

The Department hereby incorporates the accompanying Statement of Undisputed Material Facts ("SUMF") and the exhibits thereto, including the Declaration of Timothy Kootz ("Kootz Decl."), as well as the Department's *Vaughn* index.

---

[1]    The Department understands through negotiations between the parties' counsel that Plaintiffs do not challenge the Department's search for records. *See Am. Ctr. For Law & Justice v. U.S. Dep't of Justice*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018) ("[W]hen the parties make representations . . . about which issues remain outstanding, they may fairly be held to those [ ] representations."). Accordingly, the Department specifically addresses only the challenges to the Department's withholdings identified by Plaintiffs' counsel.

On August 7, 2020, Plaintiffs submitted a FOIA request to the Department seeking:

a. All records or other documents or communications constituting or relating to the exchange of Instruments of Ratification between the U.S. and Jordan relating to the Treaty.

b. All records or other documents or communications constituting or relating to any proposed or actual presidential proclamation and/or Executive Order declaring the Treaty to be in force.

c. All records or other documents or communications constituting or relating to any diplomatic notes or other communications from Jordan with respect to Jordan's internal procedures with respect to bringing the Treaty into force.

d. All records or other documents or communications constituting or relating to the Extradition Request, including intra-U.S. government communications as well as communications between the U.S. government and Jordan with respect thereto.

e. All records or other documents or communications constituting or relating to Jordan's refusal to comply with the Extradition Request, including intra-U.S. government communications as well as communications between the U.S. government and Jordan with respect thereto.

f. All records or other documents or communications relating to (a) Jordan's Court of Cassation's decision, on or about March 20, 2017, that the Treaty is invalid under Jordanian constitutional law, including intra-U.S. government communications as well as communications between the U.S. government and Jordan; and (b) any prior ruling by a Jordanian court (including without limitation in 1996) regarding the validity or effectiveness of the Treaty.

g. All records or other documents or communications relating to any statement by or communication from Jordan regarding whether the Treaty is in force, including intra-U.S. government communications as well as communications between the U.S. government and Jordan.

h. All records or other documents or communications relating to (a) the inclusion of the Treaty in Treaties in Force, and (b) the statement in DOS's "Country Reports on Terrorism 2019: Jordan" that, in the context of noting the Extradition Refusal, "The United States regards the extradition treaty with Jordan as valid and in force."

i. All records or other documents or communications relating to any instances where the Treaty has (a) been applied or utilized or (b) not applied or utilized with respect to the extradition, transfer or rendition of persons from Jordan to the U.S., other than Tamimi, including but not limited to Eyad Ismoil (a/k/a Iyad Isama'il Al-Najim); Mohammad Zaki Amawi; and Nader Saadeh.

The time period for this request is January 1, 1996, to August 7, 2020.

By letter dated August 11, 2020, the Department's Office of Information Programs and Services ("IPS") acknowledged receipt of Plaintiffs' FOIA request and assigned it Case Control Number F-2020-07550.

As relevant here, after conducting a search and negotiations with Plaintiffs, the Department located 62 responsive records, and of these 62 records only twenty-nine are being challenged by Plaintiff. The Department withheld 25 of the challenged records in part pursuant to Exemptions 1, 5, and 7(A), 5 U.S.C. §§ 552(b)(1), (b)(5), and (b)(7)(A). *See generally* Ex. B. – *Vaughn* Index. The Department withheld 4 records in full pursuant to Exemptions 5 and 7(A), 5 U.S.C. §§ 552(b)(5) and (b)(7)(A). *See id.*

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Rsch. Ctr. v. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment." (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009))). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations

describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash.* ("*CREW*") *v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the Act's nine exemptions. *See* 5 U.S.C. § 552(b); *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions. 5 U.S.C. § 552(a)(4)(B); *Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index or declaration that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)). The supporting documentation must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treasury Emps. Union*, 802 F.2d at 527 n.9.

Although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project*, 656 F.2d at 738); *see Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice." (citing *Gallant v. Nat'l Lab. Rels. Bd.*, 26 F.3d 168, 172-73 (D.C. Cir. 1994))). Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

Plaintiffs challenge the Department's withholding of certain information made under FOIA Exemptions 1, 5, and 7, 5 U.S.C. § 552(b)(1, 5, and 7). As explained herein, the Department properly withheld the disputed information pursuant to the classified documents exemptions found in Executive Order 13625 sections 1.4(b) and (d), the deliberative process privilege, and the protections found in FOIA exemption 7(a) for law enforcement information. Because there is no genuine dispute of material act, the Department is entitled to judgment as a matter of law.

The Department has established that the challenged material withheld under FOIA Exemption 1 were properly withheld pursuant to the parameters laid out in Executive Order 13625 sections 1.4(b) and (d). The Department, through the Declaration of Mr. Kootz, has attested that material that was classified at the "CONFIDENTIAL" or "SECRET" level was deserving of its classification status and met the bar for classification. Additionally, certain withheld information

contained foreign government information and foreign relations or foreign activities of the United States, including confidential sources properly withheld under 1.4(b) and 1.4(d).

Defendant has also established that parts of the challenged materials were properly withheld pursuant to the deliberative process privilege, attorney client privilege, and attorney work product privilege recognized by FOIA Exemption 5. Portions of the withheld information are predecisional, as the disputed material predate final agency action on communications to Jordan and negotiations regarding Tamimi's extradition. The disputed materials are also deliberative because they reflect internal agency debate, discussion, and advice, embodying precisely the type of give and take between agency officials that the privilege was designed to protect. Disclosure of these materials would stifle and chill intra and inter-agency dialogue by releasing sensitive internal communications about a controversial topic and would cause confusion about the foreign policy stances of the United States. Further, portions of the withheld documents were withheld subject to the attorney client privilege or attorney work product privilege. These documents represent advice given by Department or government attorneys to their internal department clients regarding legal aspects of the ongoing negotiation, the U.S.-Jordan extradition treaty, and the criminal investigation into Tamimi. These documents were prepared in advance of foreseeable litigation relate to the Tamimi extradition and/or criminal case.

The Department has further established that parts of the disputed material were properly withheld pursuant to FOIA Exemption 7(A). This subset of materials relates to the Department of Justice—a law enforcement agency of the U.S. Government—and their ongoing criminal investigation into Tamimi. These records were properly withheld under 7(A) because they relate to an ongoing criminal investigation matter and disclosure of these sensitive materials could impact the course of the investigation. In particular, disclose of materials related to the ongoing criminal

investigation of Tamimi could impact the ability of the State Department to continue to engage cooperatively with Jordan regarding Tamimi's extradition.

## I.    The Department Properly Withheld Records and Information Pursuant to FOIA Exemption 1.

"Exemption 1 authorizes the withholding of 'matters' that are 'specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy' if they 'are in fact properly classified pursuant to such Executive order.'" *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(1)). Executive Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), is "the operative classification order under Exemption 1." *Judicial Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013). That Order provides that "information … owned by, produced by or for, or … under the control of the United States Government" may be classified by "an original classification authority" if "the information falls within one or more of [certain enumerated] categories" and "the original classification authority determines that the unauthorized disclosure of the information reasonably could be ]expected to result in damage to the national security … [that] the original classification authority is able to identify or describe." Executive Order No. 13,526 § 1.1(a). The categories of information that may be classified under the Order include "foreign government information" or "foreign relations or foreign activities of the United States, including confidential sources." *Id.* §§ 1.4(b), (d).

Courts in FOIA cases "'must accord substantial weight to an agency's affidavit concerning the details of the classified status of [a] disputed record.'" *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). They must do so because they "'lack the expertise to second-guess … agency opinions in the typical national security FOIA case,'" *id.* (quoting *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993)),

and because "'any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm.'" *Id.* (quoting *Wolf*, 473 F.3d at 374). They must also do so because the term "pertains" as used in § 1.4 of Executive Order No. 13,526 "'is not a very demanding verb." *Judicial Watch*, 715 F.3d at 941 (quoting *Judicial Watch, Inc. v. Dep't of Def.*, 857 F. Supp. 2d 44, 60 (D.D.C. 2012)).

Here, the withholdings that the Department has made under Exemption 1 are discussed in the *Vaughn* indices and the Declaration of Timothy Kootz. In his role as an original classification authority, Mr. Kootz determined that certain information requested by Plaintiffs require a classification designation at the "CONFIDENTIAL" and "SECRET/NOFORN" levels since its unauthorized disclosure reasonably could be expected to cause serious damage or damage to the national security. *Id.* ¶¶ 12-13. Mr. Kootz, through his status as an original classification authority, has conducted a line-by-line review of those documents and avers that they meet the criteria for classification set forward in Executive Order 13526 was met. *Id.* As explained in Mr. Kootz's Declaration, six of the documents which the Department withheld pursuant to their classification status were classified subsequent to the filing of this FOIA request. In making these classifications, the Department has complied with all procedural requirements set forth in Executive Order 13526. *Id.* ¶ 14.

Specifically, the Department has appropriately withheld certain portions of documents marked "CONFIDENTIAL" and "SECRET/NOFORN" under FOIA Exemption 1 as protected under Executive Order No. 13,526 § 1.4(b)'s classification of "foreign government information." Kootz Decl. ¶¶ 14-18; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 1-14). "The material withheld relates to confidential discussions about Tamimi between the United States and the Government of Jordan and related information regarding the pending request for her extradition to the United

States." *Id.* at 2-3; *see also* Kootz Decl. ¶ 17. "Release of the foreign government information in the document, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges." *Id.* ¶ 17. Disclosure also "would impact the Department's ability to convince governments to share similar information with the United States in the future." *Id.*

The Department similarly appropriately withheld portions of documents which implicate foreign government information and the foreign relations of the United States, most specifically relating to confidential discussions between the United States and Jordan regarding Tamimi and the pending request for her extradition to the United States. Kootz Decl. ¶¶ 19-23; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 1-14). "Diplomatic exchanges are premised upon, and depend upon, an expectation of confidentiality" because "[m]utual trust between governments is vital to U.S. foreign relations." Kootz Decl. ¶ 22. However, "[t]he inability of the United States to maintain the confidentiality of its diplomatic exchanges including the one here with the Jordanian government, would inevitably chill relations with other governments and could reasonably be expected to cause serious damage to U.S. national security by diminishing our access to vital sources of information." *Id.*; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 1-14). "Foreign governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest." *Id.* Accordingly, disclosure "has the potential to inject friction into, or cause damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States." Kootz Decl. ¶ 21.

Accordingly, the Department has appropriately withheld certain information pursuant to Exemption 1.

## II.    The Department Properly Withheld Records and Information Pursuant to FOIA Exemption 5.

The FOIA requires "federal agencies to make their records available to the public upon request[,]" unless the specified records are protected from disclosure by one of nine narrowly construed exemptions. *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); 5 U.S.C. § 552(a)(3)-552(b). One such exemption, Exemption 5, allows agencies to withhold "inter-agency or intraagency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As a general matter, intra-agency communications are those between employees within a single executive branch agency, and interagency communications are between employees of different agencies or departments. *Judicial Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97, 109 (D.D.C. 2018) (also discussing intra-agency consultant corollary). One well-recognized civil discovery privilege that permits agencies to withhold records under Exemption 5 is the deliberative process privilege. *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021).

The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The object of the privilege is to enhance the "quality of agency decisions" by "protecting open and frank discussion among those who make [decisions] within Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (quoting *Sears*, 421 U.S. at 151). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front

page news." *Klamath*, 532 U.S. at 9; *Sierra Club*, 141 S.Ct. at 785 (noting the privilege encourages candor among agency officials and "blunts the chilling effect that accompanies the prospect of disclosure."); *EPA v. Mink*, 410 U.S. 73, 87 (1973) (explaining that Government decision making would be greatly hampered if agencies were "prematurely forced to 'operate in a fishbowl.'" (referencing S. Rep. No. 813, at 9 (1965))).

To properly assert the deliberative process privilege under Exemption 5, the Agency must show that the contested intra or inter-agency records are both "'predecisional' and 'deliberative.'" *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). Here, the Department has satisfied both requirements for all information withheld pursuant to Exemption 5 under the deliberative process privilege. Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 15-16, 19, 21-29).

**A.  The Withheld Information Is Both Intra-Agency and Inter-Agency Communication Protected by FOIA Exemption 5**

FOIA Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The FOIA statute defines "agency" as "an authority of the Government of the United States" including "any executive department," "establishment in the executive branch of the Government," or "independent regulatory agency." 5 U.S.C. §§ 551(1), 552(f). "Intra-agency" memorandum generally refers to those documents "addressed both to and from employees of a single agency." *Klamath*, 532 U.S. at 9-10 (quoting *Dep't of Just. v. Julian*, 486 U.S. 1, at 18 n.1 (1988) (Scalia, J. dissenting)).

Here, the Department withheld parts of internal State Department documents, as well as communications between and with the Department of Justice and FBI. The withheld information is covered under Exemption 5 as either intra or inter-agency communications. Kootz Decl. ¶¶ 25-26; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 15-16, 19, 21-29). These documents were

- 11 -

prepared through the course of the bilateral U.S.-Jordan negotiations regarding the pending extradition request for Tamimi and they reflect the views of a variety of U.S. government stakeholders on this issue. Kootz Decl. ¶¶ 28-32; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 15-16, 19, 21-29). Because, consistent with D.C. Circuit precedent, the protected documents are intra or inter-agency communications, they are eligible for protection under FOIA Exemption 5. *Cause of Action Inst. v. Dep't of Com.*, 513 F. Supp. 3d 116, 125 (D.D.C. 2021).

### B. The Withheld Information Is Covered by the Deliberative Process Privilege as Predecisional

To qualify for protection under Exemption 5, the United States Supreme Court has held that "a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8. Interpreting the second condition, the Supreme Court stated that Exemption 5 covers civil discovery privileges, including the deliberative process privilege, a form of executive privilege. *Id.* The deliberative process privilege permits the agency to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150. To be covered by this privilege, the agency must show that the withheld documents are both predecisional and deliberative. *Machado*, 971 F.3d at 370.

"A document is predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). The agency's categorization of a document as predecisional is not dispositive: courts should undertake a functional analysis of "whether the agency treats the

document as its final view on the matter." *Sierra Club*, 141 S. Ct. at 786, 788. Predecisional documents can lose that status if adopted as the agency's final position on the matter, but the privilege still protects information that was part of the agency's "group thinking in the process of working out its policy." *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 8 (D.C. Cir. 2014); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). To show that a document is predecisional, the agency does not need to identify a specific final decision on the subject, if one exists at all, but should explain the role the contested document played in the deliberative process. *Access Reps. v. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991); *see Sears*, 421 U.S. at 151 n.18 (noting that not all recommendations will ripen into agency decisions).

The challenged withheld material is predecisional. Plaintiff seeks disclosure of certain documents which reflects the internal or intra-agency deliberations concerning U.S. actions in the negotiations with Jordan over Tamimi's extradition. Kootz Decl. ¶¶ 26-32. These documents include draft letters prepared by the Department of Justice to the Jordanian Ministry of Justice, background and talking points developed for Department officials ahead of a meeting with Jordanian officials, inter- and intra-agency communication regarding the extradition request and the U.S.-Jordanian dialogues concerning that request, and agency communications regarding questions and concerns raised by Plaintiff regarding the pending extradition request. *Id.*; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 15-16, 19, 21-29). All these documents constitute material developed before the Department has reached an official policy decision on a certain matter. Kootz Decl. ¶¶ 24-26. The withheld documents are deliberative because they reflect the distillation of the Department's (and other agencies') consideration of facts and legal issues relevant to the formulation of the agencies' policy positions. They form part of the agency deliberative process and thus fall under FOIA Exemption 5. *Id.*

**C.      The Withheld Information Is Covered by the Deliberative Process Privilege as Deliberative**

Deliberative records are those "prepared to help the agency formulate its position," *Sierra Club,* 141 S. Ct. at 786, by implicating the "consultative process" including communications which reflect the "type of back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve" the agency's proposed policies. *Reps. Comm. For Freedom of the Press v. FBI*, 3 F.4th 350, 364 (2021). In short, the "key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'" *Id.* (quoting *Machado*, 971 F.3d at 370); *see Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (stating that documents part of the deliberative process make recommendations or express opinions on legal or policy matters).

In order to assist court's in evaluating whether disputed records are deliberative, the D.C. Circuit in *Judicial Watch, Inc. v. Department of Justice*, 20 F.4th 49, 55 (D.C. Cir. 2021), advised agencies to explain four factors: (1) what deliberative process is involved; (2) the role played by the disputed documents in the course of that process; (3) the nature of the decision making authority vested in the person issuing the disputed document; and (4) the relative position in the agency's chain of command of the persons authoring and receiving the document.

Here, an application of the *Judicial Watch* factors shows that the Department's withholdings were proper under FOIA Exemption 5. The withheld inter- and intra-agency communications reflect the deliberative process within the U.S. Government as policy decisions are formulated. The draft letter prepared by the Department of Justice to the Jordanian Ministry of Justice is deliberative because it represents a document under consideration and under formulation within the Department which has not yet been finalized into policy. Ex. B - *Vaughn* Index (Doc. No. 29). The background and talking points developed for Department officials ahead of a meeting

with Jordanian officials is deliberative in that it represents a distillation of the views of multiple Department stakeholders on the legal and factual issues which may arise during the meeting with Jordanian officials, yet not formulated at the level of the policymaker. *Id.* (Doc. No. 27).  The memorandum regarding the U.S.-Jordanian extradition treaty reflect the attorneys' consideration of relevant facts and law to be provided to a senior Department official for consideration before making a policy decision. *Id.* (Doc. No. 15). The inter- and intra-agency communications regarding the extradition request and the U.S.-Jordanian dialogues concerning that request are deliberative because it contains the exchange of viewpoints between stakeholders and the distillation of multiple agencies' considerations of the factual and legal matters posed by the extradition request. *Id.* (Doc. Nos. 1-5, 16, 19, 25-26, 28). The agency communications regarding questions and concerns raised by Plaintiffs regarding the pending extradition request are also deliberative, they contain the exchange of views and distillation of opinions on how to respond to the factual and legal issues raised in Plaintiffs' queries. *Id.* (Doc. Nos. 21-24).

### D.      The Withheld Information is Covered by the Attorney Client Privilege

The attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data*, 566 F.2d at 252. This privilege protects "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)). Courts may infer confidentiality where communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States*, 617 F.2d at 863; *see also Tax Analysts*, 117 F.3d at 618 ("[T]he 'client' may be the agency and the attorney may be an agency lawyer.").

Here, the Department withheld portions of documents which constitute communications between Department and Jordanian officials concerning the pending request for Tamimi's extradition. Kootz Decl. ¶ 33; Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 15).  The withheld information contained within these documents are the views and advice of Department lawyers that constitute legal advice provided by those attorneys to their internal Department clients. *Id.* (Doc. Nos. 1-5). The Department also withheld a legal memorandum regarding the U.S.-Jordan Extradition treaty prepared by State Department attorneys for a senior State department official. This memorandum was provided to serve as legal advice. *Id.* (Doc. Nos. 15). "In each instance where such information was withheld, the withheld information reflects the two-way confidential communications that occur between lawyers and their clients when seeking and providing legal advice, and includes facts divulged to one or more of the attorneys for the purposes of obtaining legal advice, as well as opinions given by the attorneys based upon and reflecting those facts." Kootz Decl. ¶ 33.

Accordingly, the Department reasonably determined that disclosure of this information would discourage employees from seeking legal advice to guide their policy decisions based upon a full understanding of the relevant facts and law. *See also Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021) ("Release of attorney-client communications would undoubtably undermine our legal culture. Agencies would lose an important tool in their decisionmaking process—employees' ability to confidentially consult agency lawyers.").

### E.    The Withheld Information is Covered by the Attorney Work Product Privilege

"FOIA Exemption (b)(5) incorporates the work-product doctrine and protects against the disclosure of attorney work product." *Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 369 (D.C. Cir. 2005). It protects documents and memoranda prepared by attorneys in contemplation of

- 16 -

litigation and/or administrative proceedings. *Schoenman v. FBI*, 573 F. Supp. 2d 119, 143 (D.D.C. 2008). The attorney work-product privilege is broader than the other civil discovery privileges in that it protects factual material that is contained within the attorney work-product from disclosure. *Jud. Watch, Inc*., 432 F.3d at 371 ("[F]actual material is itself privileged when it appears within documents that are attorney work-product."). For that reason, factual material found within attorney work-product documents is not segregable from the legal analysis. *Martin v. Off. of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

The attorney work-product privilege applies before litigation commences, as long there is "some articulable claim, likely to lead to litigation." *Coastal States*, 617 F.2d at 865. The privilege extends to documents that are administrative in nature that are prepared in anticipation of litigation. *See White v. Dep't of Just*., 952 F. Supp. 2d 213, 219 (D.D.C. 2013) (holding that administrative forms used for tracking and describing the statuses of investigations are exempt from disclosure pursuant to the attorney work-product privilege.). It covers documents relating to recommendations in preparation for trial, including recommendations to forego litigation and/or settlement proposals. *Jud. Watch, Inc. v. Dep't of Homeland Sec*., 926 F. Supp. 2d 121, 139 (D.D.C. 2013); *see also Kishore v. Dep't of Just*., 575 F. Supp. 2d 243, 259 (D.D.C. 2008) (applying privilege to documents explaining government's reasons for declining prosecution). The privilege also covers attorney work-product prepared by attorneys who are not employed as litigators and to non-attorneys who are supervised by attorneys. *Jud. Watch, Inc. v. Dep't of Just.*, 806 F. App'x 5, 7 (D.C. Cir. 2020).

Here, the Department withheld portions of documents pursuant to FOIA Exemption 5's attorney work product privilege which are communications between State Department, Department of Justice, and FBI officials and lawyers regarding the U.S.-Jordan Extradition treaty

and the pending extradition request for Tamimi. Kootz Decl. ¶ 32; Ex. B - *Vaughn* Index (Doc. No. 16, 19, 21-26). These email communications, draft communications from the Department of Justice to Jordan, and communications among State Department and Department of Justice lawyers and officials regarding questions and concerns raised by Mr. Roth regarding the U.S.-Jordan Extradition Treaty and the United States' pending request for the extradition, reflect work of attorneys from the State Department and the Department of Justice prepared in anticipation of litigation of the Tamimi case. The withheld portions of these documents reflect the mental impressions, conclusions, opinions, or legal theories of State Department and Department of Justice attorneys regarding the U.S.-Jordan Extradition Treaty and the pending litigation regarding the request for the extradition of Tamimi. *Id.*

Accordingly, the Department reasonably withheld information pursuant to Exemption 5 based on the attorney work-product doctrine.

## III.  The Defendant Properly Withheld Records and Information Pursuant to FOIA Exemption 7.

### A.  Threshold Requirements of Exemption 7

Federal agencies must meet the threshold requirement of Exemption 7 before they may withhold requested documents under any of its subparts. *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982). That threshold requires the records or information to be "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "In assessing whether records are compiled for law enforcement purposes . . . the focus is on how and under what circumstances the requested files were compiled, . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Banks v. Dep't of Just.*, 538 F. Supp. 2d 228, 239 (D.D.C. 2008) (citing *Jefferson v. Dep't of Just.*, 284 F.3d 172-77 (D.C. Cir. 2002)). The types of law to be enforced for FOIA Exemption 7 purposes includes administrative, regulatory, civil, and criminal law. *Ctr. for Nat'l*

*Policy Review on Race & Urb. Issues v. Weinberger*, 502 F.2d 370, 373 (D.C. Cir. 1974) (holding that an administrative determination has the "salient characteristics of 'law enforcement' contemplated" by Exemption 7 threshold requirement); *see also McErlean v. Dep't of Just.*, Civ. A. No. 97-7831, 1999 WL 791680, at *8 (S.D.N.Y. Sept. 30, 1999) (stating that "it is well-settled that documents compiled by the INS in connection with the administrative proceedings authorized by the Immigration and Naturalization Act are documents compiled for 'law enforcement purposes'").

Courts give great deference to a "criminal law enforcement agency['s]" assertion that its records were for law enforcement purposes because government agencies "typically go about their intended business." *Pratt*, 673 F.2d at 408. Considering that deference, the D.C. Circuit has opined that an agency need only show that the nexus between the agency's activity and its law enforcement duties "must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987) (quoting *Pratt*, 673 F.2d at 421); *see also Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (noting that the Exemption 7 threshold may be satisfied even where the records in question do not relate to a particular investigation).

Here, the Department has met the threshold requirement under Exemption 7 since the withheld records were compiled for law enforcement purposes. The records at issue were compiled in furtherance of the Department of Justice's criminal investigation into Tamimi and her alleged involvement in the killing of U.S. Citizens. Kootz Decl. ¶ 35. The records were compiled to document the Department of Justice's criminal investigation into Tamimi's alleged offenses, thus meeting the threshold requirement of Exemption 7 that they be compiled for law enforcement purposes.

## B.       The Defendant Properly Withheld Pursuant to Exemption 7(A)

FOIA Exemption 7(A) permits agencies to withhold "records or information compiled for law enforcement purposes [when disclosure] . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In enacting 7(A), "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations." *Nat'l Lab. Rels. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978). To justify the application of Exemption 7(A), the agency must demonstrate that: (1) a law enforcement proceeding is pending or prospective; and (2) disclosure of the information could reasonably be expected to cause some articulable harm to the proceeding. *Voinche v. FBI*, 46 F. Supp. 2d 26, 31 (D.D.C. 1999); *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).

To satisfy this burden, the agency "need not submit declarations that reveal the exact nature and purpose of its investigations." *Blackwell v. FBI*, 680 F. Supp. 2d 79, 94 (D.D.C. 2010). In fact, "Exemption 7(A) exists precisely to shield that sort of revelation." *Id.* Accordingly, documents are exempt under Exemption 7(A) where disclosure "could reveal much about the focus and scope of the [agency's] investigation." *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996); *Mendoza v. DEA*, 465 F. Supp. 2d 5, 11 (D.D.C. 2006) ("Exemption 7(A) is properly applied to criminal investigative files of an ongoing criminal investigation.").

The Department relies on Exemption 7(A) to protect information which, if disclosed, could reasonably be expected to interfere with pending enforcement proceedings against Tamimi. Kootz Decl. ¶ 36; Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 16-18, 20, 25). Certain information in these communications was generated for the purpose of informing and assisting Department of Justice's efforts to extradite Tamimi from Jordan to the United States in connection with Department of Justice's criminal case against her related to her alleged participation in a 2001 suicide bomb attack

in Israel that resulted in the death of U.S. nationals. Kootz Decl. ¶ 36; Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 16-18, 20, 25). The premature release of that information could reasonably be expected to interfere with Department of Justice's ongoing criminal investigation and efforts to extradite Tamimi to the United States. Kootz Decl. ¶ 36. The disclosure of the information could also reasonably be expected to compromise the United States' ability to continue to work cooperatively with the Jordanian government to extradite Tamimi. *Id.* The release of this information is reasonably expected to interfere with an active, ongoing investigation, as well as any resulting prosecutions.

## IV.    Foreseeable Harm.

In addition to showing that specific documents qualify for protection under a named Exemption, the FOIA Improvement Act of 2016 further requires that an agency show that it (i) "reasonably foresees that disclosure would harm an interest protected by an exemption" to FOIA or (ii) "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "The foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Reps. Comm.*, 3 F.4th at 369. To carry this burden, an agency withholding documents under the deliberative process privilege must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370. Agencies must explain the "particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes[,]" and must "articulate the link between the specified harm and specific information contained in the material withheld." *Id.* at 369, 372 (referencing H.R. Rep. No. 391, at 9 (2016)).

Here, disclosure of the withheld materials will cause foreseeable harm to the interests protected by the FOIA's exemptions. As to Exemption 1, this Court is not required to conduct a

foreseeable harm analysis. *Clemente v. FBI*, Civ. A. No. 20-1527 (TNM), 2022 WL 17092585, at

*3 (D.D.C. Nov. 21, 2022); *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 73 n.1 (D.D.C. 2018).

In any event, even if such a showing were required of the Department, the declarant adequately

explained several interests—the national security, respecting the expectations of confidentiality

between the United States and foreign officials in confidential communications, and furthering

diplomatic relations—that would be harmed by disclosure.

       As to Exemption 5, disclosure of the withheld materials will cause foreseeable harm to two

interests protected by the deliberative process privilege: candor and international confusion of the

Department's position on controversial issues. Kootz Decl. ¶¶ 26, 31. First, disclosure of the

disputed materials would reduce candor among Department employees when brainstorming,

discussing, or critiquing proposed Agency polices, including ongoing bilateral negotiations and

extradition proceedings, for fear that those positions would be subject to premature criticism by

outside stakeholders. Kootz Decl. ¶ 31; *Mink*, 410 U.S. at 87 (explaining that the objective of the

deliberative process privilege is to protect the candor of agency decision-making which would be

harmed if employees were forced to "operate in a fishbowl"); *Donatos Sarras v. Dep't of Just.*,

Civ. A. No. 19-0861 (CRC), 2021 WL 9909763, at *8 (D.D.C. Aug. 5, 2021) (recognizing candor

as an interest protected by Exemption 5). Disclosure would chill the free exchange of ideas both

within the Department and between the Department and other executive branch when identifying,

analyzing, and discussing potential strategies for working towards an extradition agreement. *Id.*

For instance, Department staff would curb their discussion of their views of the ongoing bilateral

extradition negotiations with Jordan for fear that such communication would be released and used

against the Department in future litigation and could negatively affect the United States' foreign

policy relationships and goals. *Access Reports*, 926 F.2d at 1195 ("Disclosing internal

deliberations about controversial issues, like those at issue here, can be especially likely to endanger "candid discussion within the agency."). Thus, there is foreseeable harm to the Department's continuing foreign affairs work. *Emuwa v. Dep't of Homeland Sec.,* Civ. A. No. 20-1756 (TNM), 2022 WL 1451430, at *3 (D.D.C. May 9, 2022) (finding asylum officers would "temper their discussions" of a particular applicant and focus less on substantive information in application if disclosure permitted thereby harming the fair consideration of asylum requests on the merits); *Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 15 (D.D.C. 2021) (finding foreseeable harm to candor were details from analysis and recommendations from grant proposals released).

Second, release of these preliminary communications and positions would confuse the public as to the present state of Department policies. Kootz Decl. ¶ 31; *see also Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*, 575 F. Supp. 3d 34, 51–52 (D.D.C. 2021) ("[T]he D.C. Circuit has long recognized that the risk of public confusion "has a special force with respect to disclosures of agency positions or reasoning concerning proposed policies." (citing *Petrol. Info. Corp.*, 976 F.2d at 1436 n.10)). Here, because the withheld correspondences and communications contain predecisional matter related to how the United States should interface with Jordan, there is a substantial probability that release of the withheld materials will confuse the public as to the current state of Department thinking on those policy choices and will confuse other Countries regarding the State Department's foreign policy positions. Kootz Decl. ¶ 31. This will cause harm to the Department's ability to productively represent the foreign policy interest and priorities of the United States to the world. *Id.* In this area, where the United States is dependent on close relationships with Jordan in a volatile global neighborhood, the impacts of public and international confusion will have a real cost to the Department and to American diplomacy as a whole.

- 23 -

The Department also demonstrated the foreseeable harm that would stem from the disclosure of information protected by the information protected by the attorney-client and attorney work-product privileges.  As to attorney-client privileged information, "i[n] each instance where such information was withheld, the withheld information reflects the two-way confidential communications that occur between lawyers and their clients when seeking and providing legal advice, and includes facts divulged to one or more of the attorneys for the purposes of obtaining legal advice, as well as opinions given by the attorneys based upon and reflecting those facts." Kootz Decl. ¶ 33. Disclosure of these candid conversations would similarly chill the candor of Department attorneys for the same reasons that disclosure of the deliberative-process privileged material would. *Access Reports*, 926 F.2d at 1195.  Moreover, the attorney-work product privileged information, if disclosed, would cause foreseeable harm to the Department because its employees "may fear that expressing predecisional opinions on policy will lead to confusion internationally as to the positions of the United States" in matters that may lead to litigation. Kootz Decl. ¶ 32.

Finally, as to Exemption 7(A), for the same reasons discussed above, the Department determined that it was reasonably foreseeable that disclosure would harm interests protected under Exemption 7(A). Disclosure of the information withheld pursuant to Exemption 7(A) would interfere both with Department of Justice's ongoing criminal investigation and efforts to extradite Tamimi to the United States and compromise the United States' ability to coordinate on the effort to extradite Tamimi with Jordan. Kootz Decl. ¶ 36. Accordingly, the Department has fulfilled its obligations to demonstrate foreseeable harm.

**V.    The Department has Satisfied its Obligation to Segregate and Release Non-Exempt Information.**

While an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonably segregable portions' of responsive records that do not contain exempt information.'" *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2017); *see* 5 U.S.C. § 552(b) (requiring "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt"). Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent. v. Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Before approving the application of a FOIA exemption, district courts must make specific findings of segregability regarding the material to be withheld. *Summers v. Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Boyd v. Crim. Div. of Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007).

As explained in Mr. Kootz's Declaration, the Department undertook a careful line-by-line analysis of the sixty-two responsive records, and concluded they had released all reasonably segregable, non-exempt material. *Id.* ¶ 37. "Otherwise, the Department determined that no segregation of meaningful information in the documents could be made without disclosing information warranting protection under the law." As a result of this review, the Department provided Plaintiffs with all non-exempt responsive information.

*        *        *

## CONCLUSION

For these reasons, the Department respectfully requests that this Court grant it summary judgment.

Dated: October 28, 2024                    Respectfully submitted,

                                           MATTHEW M. GRAVES, D.C. Bar #481052
                                           United States Attorney

                                           BRIAN P. HUDAK
                                           Chief, Civil Division


                                           By: _____/s/ Stephen DeGenaro_____
                                              STEPHEN DEGENARO,
                                                D.C. Bar #1047116
                                              Assistant United States Attorney
                                              601 D Street, NW
                                              Washington, DC 20530
                                              (202) 252-7229
                                              Stephen.DeGenaro@usdoj.gov

                                           *Attorneys for the United States of America*