UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FRIMET ROTH, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 20-3838 (ABJ) |
| UNITED STATES DEPARTMENT OF STATE, | ) |
| Defendant. | ) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Local Civil Rule 7(h), Defendant, the U.S. Department of State, submits this statement of material facts as to which there is no genuine issue with respect to the issues raised in Defendant's Motion for Summary Judgment. In support thereof, Defendant submits herewith the Declaration of Department official Timothy Kootz ("Kootz Decl.," attached hereto as Exhibit A) and the Department's *Vaughn* Index (attached hereto as Exhibit B).

1. On August 7, 2020 (Exhibit 2), Plaintiff by email submitted a FOIA request to the Department seeking:

    a. All records or other documents or communications constituting or relating to the exchange of Instruments of Ratification between the U.S. and Jordan relating to the Treaty.
    b. All records or other documents or communications constituting or relating to any proposed or actual presidential proclamation and/or Executive Order declaring the Treaty to be in force.
    c. All records or other documents or communications constituting or relating to any diplomatic notes or other communications from Jordan with respect to Jordan's internal procedures with respect to bringing the Treaty into force.
    d. All records or other documents or communications constituting or relating to the Extradition Request, including intra-U.S. government communications as well as communications between the U.S. government and Jordan with respect thereto.

    e. All records or other documents or communications constituting or relating to Jordan's refusal to comply with the Extradition Request, including intra-U.S. government communications as well as communications between the U.S. government and Jordan with respect thereto.
    f. All records or other documents or communications relating to (a) Jordan's Court of Cassation's decision, on or about March 20, 2017, that the Treaty is invalid under Jordanian constitutional law, including intra-U.S. government communications as well as communications between the U.S. government and Jordan; and (b) any prior ruling by a Jordanian court (including without limitation in 1996) regarding the validity or effectiveness of the Treaty.
    g. All records or other documents or communications relating to any statement by or communication from Jordan regarding whether the Treaty is in force, including intra-U.S. government communications as well as communications between the U.S. government and Jordan.
    h. All records or other documents or communications relating to (a) the inclusion of the Treaty in Treaties in Force, and (b) the statement in DOS's "Country Reports on Terrorism 2019: Jordan" that, in the context of noting the Extradition Refusal, "The United States regards the extradition treaty with Jordan as valid and in force."
    i. All records or other documents or communications relating to any instances where the Treaty has (a) been applied or utilized or (b) not applied or utilized with respect to the extradition, transfer or rendition of persons from Jordan to the U.S., other than Tamimi, including but not limited to Eyad Ismoil (a/k/a Iyad Isama'il Al-Najim); Mohammad Zaki Amawi; and Nader Saadeh.
    j. The time period for this request is January 1, 1996, to August 7, 2020.

Kootz Decl. ¶ 5.

    2.    By letter dated August 11, 2020, (Exhibit 3), IPS acknowledged receipt of Plaintiff's FOIA request and assigned it Case Control Number F-2020-07550. Kootz Decl. ¶ 6.

    3.    The Department located 62 records responsive to the request of which 29 records are being challenged. The Department withheld 25 records in part pursuant to Exemptions 1, 5, and 7(A), 5 U.S.C. §§ 552(b)(1), (b)(5), and (b)(7)(A). The Department withheld 4 records in full pursuant to Exceptions 5 and 7(A), 5 U.S.C. §§ 552(b)(5) and (b)(7)(A). Kootz Decl. ¶ 7; Ex. B - *Vaughn* Index.

    4.    Timothy Kootz is an original classification authority. Kootz Decl. ¶ 13.

    5.    Kootz determined that all the information withheld pursuant to Exemption 1 is under the control of the United States Government. Kootz Decl. ¶ 13.

6. Kootz determined that the withheld information falls within one or more section of Executive Order 13526. Kootz Decl. ¶ 13.

7. The Department withheld portions of documents marked "CONFIDENTIAL" and "SECRET/NOFORN" under FOIA Exemption 1 as protected under Executive Order No. 13,526 § 1.4(b)'s classification of "foreign government information." Kootz Decl. ¶¶ 15-19; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 1-14).

8. The material withheld relates to confidential discussions about Tamimi between the United States and the Government of Jordan and related information regarding the pending request for her extradition to the United States. Kootz Decl. ¶ 18.

9. Release of the withheld foreign government information would cause foreign officials to believe that the United States was not able or willing to protect the confidentiality of information provided through confidential means. Kootz Decl. ¶ 18.

10. The Department withheld portions of documents that concerns both confidential sources and sensitive aspects of U.S. foreign relations, including, in particular, diplomatic exchanges between the United States and the Government of Jordan regarding the extradition of Tamimi to the United States as protected under Executive Order No. 13,526 § 1.4(d)'s classification of "foreign relations or foreign activities of the United States." Kootz Decl. ¶¶ 20-24; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 1-14).

11. Information withheld pursuant to Section 1.4(d) includes information that implicates aspects of U.S. relationships with allies and adversaries, as well as the activities it undertakes to advance its foreign policy mission abroad. Kootz Decl. ¶ 21.

12. Release of this withheld information would inject friction into, or cause damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S.

national security, including some in which public opinion might not currently favor close cooperation with the United States. Kootz Decl. ¶ 22.

13. Kootz determined that the unauthorized disclosure of the information withheld pursuant to Exemption 1 reasonably could be expected to cause serious damage or damage to the national security. Kootz Decl. ¶ 13.

14. The Department withheld information pursuant to Exemption 5 as protected by deliberative process, attorney-client, and attorney work-product. Kootz Decl. ¶¶ 25-33.

15. The Department withheld certain information pursuant to Exemption 5 that are intra or inter-agency communications between and with the Department, the Department of Justice and the FBI. Kootz Decl. ¶¶ 25-31; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 15-16, 19, 21-29).

16. This withheld information is predecisional because they include drafts of several types of documents ahead of various meetings and other decisions made by high level officials before those officials reached an official policy decision. Kootz Decl. ¶¶ 25-31.

17. This withheld information is also deliberative because the withheld inter- and intra-agency communications reflect the deliberative process within the U.S. Government as policy decisions are formulated in relation to the United States' engagement with Jordan in regards to efforts to extradite Tamimi. Kootz Decl. ¶¶ 25-31.

18. The Department withheld certain information pursuant to Exemption 5 that are protected by the attorney-client privilege. Kootz Decl. ¶ 33; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 15).

19. The withheld information contained within these documents are the views and advice of Department lawyers that constitute legal advice provided by those attorneys to their internal Department clients. Kootz Decl. ¶ 33.

20. In each instance where such information was withheld, the withheld information reflects the two-way confidential communications that occur between lawyers and their clients when seeking and providing legal advice, and includes facts divulged to one or more of the attorneys for the purposes of obtaining legal advice, as well as opinions given by the attorneys based upon and reflecting those facts. Kootz Decl. ¶ 33.

21. The Department withheld certain information pursuant to Exemption 5 that are protected by the attorney work product privilege. Kootz Decl. ¶ 32; *see also* Ex. B - *Vaughn* Index (Doc. Nos. 16, 19, 21-26).

22. The withheld information reflects the mental impressions, conclusions, opinions, or legal theories of State Department and Department of Justice attorneys regarding the U.S.-Jordan Extradition Treaty and the pending litigation regarding the request for the extradition of Tamimi. Kootz Decl. ¶ 32.

23. The Department withheld certain pursuant to Exemption 7(A) that was compiled for law enforcement purposes. Kootz Decl. ¶¶ 34-36.

24. The information withheld pursuant to Exemption 7(A) was compiled in furtherance of the Department of Justice's criminal investigation into Tamimi and her alleged involvement in the killing of U.S. Citizens. Kootz Decl. ¶ 36; Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 16-18, 20, 25).

25. The Department relies on Exemption 7(A) to protect information which, if disclosed, could reasonably be expected to interfere with pending enforcement proceedings against Tamim because the information withheld was generated for purposes of assisting the Department of Justice's efforts to extradited Tamimi in connection with Tamimi's criminal case. Kootz Decl. ¶ 31; Ex. B - *Vaughn* Index (Doc. Nos. 1-5, 16-18, 20, 25).

26. Disclosure of the information withheld by Exemption 1 would reasonably be expected to harm the government's interests in protecting foreign government information and the foreign relations of the United States. Kootz Decl. ¶¶ 13-24.

27. Disclosure of the information withheld by Exemption 5 would reasonably be expected to harm the government's interests in protecting deliberative process, attorney-client communications, and attorney work product because disclosure would chill candid advise rendered by Department attorneys and employees, create international confusion about the Department's position on controversial issues until formalized, chill attorneys' candid advice on matters that may lead to litigation. Kootz Decl. ¶¶ 26-33.

28. Disclosure of the information withheld by Exemption 7(A) would reasonably be expected to harm the government's interests in that Exemption because disclosure would interfere both with Department of Justice's ongoing criminal investigation and efforts to extradite Tamimi to the United States and compromise the United States' ability to coordinate on the effort to extradite Tamimi with Jordan. Kootz Decl. ¶ 36.

29. The Department undertook a careful line-by-line review of all documents in this case and segregated non-exempt information when possible. Kootz Decl. ¶ 37.

30. Otherwise, the Department determined that no segregation of meaningful information in the documents could be made without disclosing information warranting protection under the law. Kootz Decl. ¶ 37.

31. As a result of this review, the Department provided Plaintiff with all non-exempt responsive information. Kootz Decl. ¶ 37.

*   *   *

Date: October 28, 2024				Respectfully submitted,

						MATTHEW M. GRAVES, D.C. Bar #481052
						United States Attorney

						BRIAN P. HUDAK,
						Chief, Civil Division

					By:	/s/ *Stephen DeGenaro*
						STEPHEN DEGENARO
						D.C. Bar #1047116
						Assistant United States Attorney
						601 D St., N.W.
						Washington, D.C. 20530
						(202) 252-7229
						Stephen.DeGenaro@usdoj.gov

						*Attorneys for the United States of America*