UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| FRIMET ROTH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>Defendant. | Civil Action No. 20-3838 (ABJ) |

# DECLARATION OF TIMOTHY J. KOOTZ

Pursuant to 28 U.S.C. § 1746, I, Timothy J. Kootz, declare and state as follows:

1. I am the Deputy Assistant Secretary ("DAS") of the Office of Shared Knowledge Services ("A/SKS")[1] of the United States Department of State (the "Department" or "State"), a position in which I have served since September 9, 2024. Previously, I was the Director of the Office of Information Programs and Services ("IPS")[2] and served in that capacity beginning on March 26, 2023. I am the Department official responsible for overseeing the response to requests for records under the Freedom of Information Act ("FOIA"), 5. U.S.C. § 552; the Privacy Act of 1974, 5 U.S.C. § 552a; and other applicable records access provisions. I also served as the Agency Records Officer and the Chief of Records and Archives Management Division of IPS from October 2016 to March 2023.

---

[1] The Office of Shared Knowledge Services is formerly the Office of Global Information Services ("A/GIS").
[2] The Office of Information Programs and Services ("IPS") was renamed the Information Access Programs Directorate ("IAP") in October 2024.

2. I am familiar with the efforts of Department personnel to process the FOIA request that is the subject of this litigation, and I am in charge of coordinating the agency's processing efforts with respect to that request. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.

3. The core responsibilities of Information Access Programs Directorate ("IAP") include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by Members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) national security classification management and declassification review; (3) research; and (4) technology applications that support these activities.

4. This declaration only explains the Department's withholdings made under FOIA Exemptions 1, 5, and 7(A), 5 U.S.C. §§ 552(b)(1), (b)(5), and (b)(7)(A), in the records that Plaintiff is challenging. A *Vaughn* index provides a detailed description of the information withheld in these records and the justifications for those withholdings that the Plaintiff is challenging.

## I. ADMINISTRATIVE PROCESSING OF PLAINTIFF'S FOIA REQUEST

5. On August 7, 2020, Plaintiff by email submitted a FOIA request to the Department seeking:

   a. All records or other documents or communications constituting or relating to the exchange of Instruments of Ratification between the U.S. and Jordan relating to the Treaty.

b. All records or other documents or communications constituting or relating to any proposed or actual presidential proclamation and/or Executive Order declaring the Treaty to be in force.
c. All records or other documents or communications constituting or relating to any diplomatic notes or other communications from Jordan with respect to Jordan's internal procedures with respect to bringing the Treaty into force.
d. All records or other documents or communications constituting or relating to the Extradition Request, including intra-U.S. government communications as well as communications between the U.S. government and Jordan with respect thereto.
e. All records or other documents or communications constituting or relating to Jordan's refusal to comply with the Extradition Request, including intra-U.S. government communications as well as communications between the U.S. government and Jordan with respect thereto.
f. All records or other documents or communications relating to (a) Jordan's Court of Cassation's decision, on or about March 20, 2017, that the Treaty is invalid under Jordanian constitutional law, including intra-U.S. government communications as well as communications between the U.S. government and Jordan; and (b) any prior ruling by a Jordanian court (including without limitation in 1996) regarding the validity or effectiveness of the Treaty.
g. All records or other documents or communications relating to any statement by or communication from Jordan regarding whether the Treaty is in force, including intra-U.S. government communications as well as communications between the U.S. government and Jordan.
h. All records or other documents or communications relating to (a) the inclusion of the Treaty in Treaties in Force, and (b) the statement in DOS's "Country Reports on Terrorism 2019: Jordan" that, in the context of noting the Extradition Refusal, "The United States regards the extradition treaty with Jordan as valid and in force."
i. All records or other documents or communications relating to any instances where the Treaty has (a) been applied or utilized or (b) not applied or utilized with respect to the extradition, transfer or rendition of persons from Jordan to the U.S., other than Tamimi, including but not limited to Eyad Ismoil (a/k/a Iyad Isama'il Al-Najim); Mohammad Zaki Amawi; and Nader Saadeh.
j. The time period for this request is January 1, 1996, to August 7, 2020.

6. By letter dated August 11, 2020, IPS acknowledged receipt of Plaintiff's FOIA request and assigned it Case Control Number F-2020-07550.

7. The Department located 62 responsive records, and of these 62 records only 29 are being challenged by Plaintiff. The Department withheld 25 of the challenged records in part pursuant to Exemptions 1, 5, and 7(A), 5 U.S.C. §§ 552(b)(1), (b)(5), and (b)(7)(A). The

Department also withheld four of the challenged records in full pursuant to Exemptions 5 and 7(A), 5 U.S.C. §§ 552(b)(5) and (b)(7)(A).

## II. FOIA EXEMPTIONS CLAIMED

### FOIA Exemption 1 – Classified Information

8. 5 U.S.C. § 552(b)(1) states that the FOIA does not apply to mattes that are:

> (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order . . . .

9. Based upon my personal review of the documents and information furnished to me in the course of my official duties, I have determined that the information withheld under Exemption 1, 5 U.S.C. § 552(b)(1), continues to meet the classification criteria of E.O. 13526 and that the Department has not previously authorized or officially acknowledged public release of this information. This information includes information classified at the CONFIDENTIAL and SECRET levels. Section 1.2 of E.O. 13526 states:

> "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe.

> "Confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe.

10. Section 6.1(l) of E.O. 13526 defines "damage to the national security" as follows:

> "Damage to the national security" means harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information.

11. Information withheld in this case under Exemption 1 is properly classified pursuant to Sections 1.4(b) and 1.4(d) of E.O. 13526. Section 1.4 provides:

> Information shall not be considered for classification unless . . . it pertains to one or more of the following: . . . (b) foreign government information; . . . (d) foreign relations or foreign activities of the United States, including confidential sources . . . .

12. For information to be properly classified and withheld from disclosure pursuant to Exemption 1, the information must meet all the following requirements set forth in Section 1.1(a) of E.O. 13526:

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories listed in section 1.4 of [E.O. 13526]; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

13. In my role as an original classification authority, I have determined that the information withheld pursuant to Exemption 1 is under the control of the United States Government, falls within one or more sections of E.O. 13526, and requires classification at the SECRET or CONFIDENTIAL levels because its unauthorized disclosure reasonably could be expected to cause serious damage or damage to the national security.

14. Section 1.7(d) of E.O. 13526 contemplates that in certain situations decisions to classify or reclassify information may be made after the information has been requested under the FOIA. In this case, pursuant to the provisions of Section 1.7(d), on October 14, 2021, the then Director of the Office of Information Programs and Services properly classified as CONFIDENTIAL certain information in five documents at issue in this case that was previously UNCLASSIFIED, and on March 6, 2023, the then Deputy Assistance Secretary for Global Information Services properly classified as CONFIDENTIAL certain information in one

document at issue in this case that was previously UNCLASSIFIED. I also personally reviewed the information in these six documents and determined their current classification status, consistent with Section 1.1(a) of E.O. 13526. (See *Vaughn* Index documents B-1942772, B-1942773, B-1942775, B-1942777, B-1942780, and B-2428523.) Pursuant to the procedural requirements of E.O. 13526, the six documents whose classification was adjusted following the submission of the FOIA request were reviewed by the Senior Agency Official for classified national security information. Assistant Secretary Alaina B. Teplitz, exercising the authorities of the Under Secretary for Management of the Department of State, reviewed the CONFIDENTIAL documents and concurred with their proper classification.

### Section 1.4(b) – Foreign Government Information

15. Section 6.1(s) of E.O. 13526 defines "foreign government information" as follows:

> (1) information provided to the United States Government by a foreign government or governments, an international organization of governments, or any element thereof, with the expectation that the information, the source of the information, or both, are to be held in confidence;
>
> (2) information produced by the United States Government pursuant to or as a result of a joint arrangement with a foreign government or governments, or an international organization of governments, or any element thereof, requiring that the information, the arrangement, or both, are to be held in confidence . . . .

16. Section 1.1(d) of E.O. 13526 states:

> The unauthorized disclosure of foreign government information is presumed to cause damage to the national security.

17. The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy. Release of foreign government information provided in confidence, either voluntarily by the Department or by

order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. Governments could reasonably be expected to be less willing to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest.

18. The Department withheld certain foreign government information the release of which could reasonably be expected to cause serious damage to the national security. Specifically, the Department withheld information in these documents relating to confidential discussions about Tamimi between the United States and the Government of Jordan and related information regarding the pending request for her extradition to the United States. Release of the foreign government information in these documents, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. The disclosure of such information would impact the Department's ability to convince governments to share similar information with the United States in the future.

19. Foreign government information withheld in these documents is currently and properly classified pursuant to Section 1.4(b) of E.O. 13526 and is, therefore, exempt from release under FOIA Exemption 1.

### Section 1.4(d) – Foreign Relations or Foreign Activities of the United States

20. Some of the withheld information is classified under Section 1.4(d) of E.O. 13526. This information concerns both confidential sources and sensitive aspects of U.S. foreign relations, including, in particular, diplomatic exchanges between the United States and the Government of Jordan regarding the extradition of Tamimi to the United States.

21.     Information withheld pursuant to Section 1.4(d) includes information that implicates aspects of U.S. relationships with allies and adversaries, as well as the activities it undertakes to advance its foreign policy mission abroad.

22.     Release of this classified information has the potential to inject friction into, or cause damage to, a number of our bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States.

23.     Diplomatic exchanges are premised and depend upon an expectation of confidentiality. Mutual trust between governments is vital to U.S. foreign relations. The inability of the United States to maintain confidentiality in its diplomatic exchanges would inevitably chill relations with other governments and could reasonably be expected to damage U.S. national security by diminishing our access to vital sources of information.

24.     For these reasons, the Department withheld certain information in these documents that is currently and properly classified pursuant to Section 1.4(d) of E.O. 13526 and is, therefore, exempt from release under FOIA Exemption 1.

### FOIA Exemption 5 – Privileged Information

25.     5 U.S.C. § 552(b)(5) states that the FOIA does not apply to:

> inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency....

26.     Exemption 5, 5 U.S.C. § 552(b)(5), protects from disclosure information that is normally privileged in the civil discovery context, including information that is protected by the deliberative process privilege. The deliberative process privilege protects the confidentiality of candid views and advice of U.S. Government officials in their internal deliberations related to

policy formulation and administrative direction. For example, certain information withheld in this case reflects the internal exchange of ideas and recommendations when Department officials are formulating a strategy for official action. Disclosure of material containing the details of internal discussions held in the course of formulating a policy could reasonably be expected to chill the open and frank exchange of comments and opinions that occurs between Department officials at these critical times. In addition, disclosure of these details would severely hamper the ability of responsible Department officials to formulate and carry out executive branch programs. The Department has withheld certain information in a number of documents in this case, as detailed below, on the basis of this exemption pursuant to the deliberative process privilege. Disclosure of this information, which is pre-decisional and deliberative, and contains selected factual material intertwined with opinion, would inhibit candid internal discussions and the expression of recommendations and judgments regarding current problems and preferred courses of action by Department personnel.

27.     Some of the documents withheld under the deliberative process privilege entailed email communications between Department of State officials and officials of the Jordanian Government regarding a meeting held among Department of State, Department of Justice ("DOJ"), and Jordanian Government officials concerning the pending request for Tamimi's extradition. These documents fall under the deliberative process privilege because they are predecisional and deliberative communications concerning State and DOJ officials' views on policy decisions related to the pending extradition request for Tamimi. They are predecisional because the written contents of the emails predate any final determination about the executive branch's position on the policy issues. They are deliberative because they reflect the distillation

of the two agencies' consideration of facts and legal issues relevant to the formulation of their positions.

28.  The Department also withheld a memorandum pursuant to the deliberative process privilege that contained recommendations of Department attorneys on the U.S.-Jordan Extradition treaty, prepared for a senior Department official.  This document falls under the deliberative process privilege because the views it contains are predecisional in that they predate any final decision regarding the legal issues described in the memorandum.  They are deliberative because as they reflect the distillation of attorneys' consideration of facts and law relevant to the U.S.-Jordan Extradition Treaty and were provided to a senior Department official for consideration as part of a policy-making process.

29.  Additionally, the Department withheld portions of email communications between Department and other officials at the Department of Justice and the Federal Bureau of Investigation ("FBI") pursuant to the deliberative process privilege.  One of these communications was regarding the U.S.-Jordan Extradition Treaty; portions of this document are subject to the deliberative process privilege because they contain views that are predecisional in that they predate any final decision regarding the executive branch's policy and legal approach to the extradition request for Tamimi following the Jordanian Court of Cassation's ruling on the request.  Those portions are also deliberative because they reflect the distillation of the two agencies' consideration of facts and legal issues relevant to the extradition request and the related policy decisions. Further, the Department withheld portions of an email chain regarding questions and concerns raised by Mr. Roth related to the pending extradition request.  The withheld portions of this communication reflected the exchanging of views of officials in the two

agencies on the substance of Mr. Roth's questions prior to any policy decision being arrived at by the U.S. Government.

30. The Department also withheld draft communications pursuant to the deliberative process privilege: these documents include multiple instances of draft correspondence from the Department of Justice to the Government of Jordan. These documents reflect the distillation of the two agencies' views and are predecisional as they predated a final agency ruling on policy.

31. Disclosure of the withheld records subject to the deliberative process privilege would cause foreseeable harms to U.S. Government interests. This foreseeable harm is particularly heightened in the context of foreign affairs, where the final positions of the U.S. Government have the potential to implicate, and may negatively affect, its relationships with foreign countries. Were non-final recommendations or draft opinions on issues of foreign affairs to be released, this could cause international confusion about the United States position regarding certain foreign affairs issues and harm relations with the affected countries. The withheld information is, accordingly, exempt from release under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.

32. The Department also withheld information under Exemption 5 pursuant to the attorney work-product privilege from documents prepared by Department of State lawyers providing legal advice to their internal Department clients regarding the pending request for Tamini's extradition from Jordan and the U.S.-Jordan Extradition treaty. The attorney work-product privilege protects information prepared by an attorney or at his or her direction in contemplation of litigation. Each of the documents from which withholdings were made pursuant to the attorney work-product privilege were prepared by or at the request of an attorney in anticipation of foreseeable litigation. Furthermore, disclosure of these disputed materials has

the potential to chill future discussions among Department employees, who may fear that expressing predecisional opinions on policy will lead to confusion internationally as to the positions of the United States. For these reasons, portions of the withheld information are exempt from release under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the attorney work-product doctrine.

33. The Department has also withheld certain information pursuant to the attorney-client privilege that reflects consultations undertaken in confidence between Department of Justice attorneys and officials from the Department of State, Department of Justice, and the FBI regarding Tamimi's extradition. In each instance where such information was withheld, the withheld information reflects the two-way confidential communications that occur between lawyers and their clients when seeking and providing legal advice, and includes facts divulged to one or more of the attorneys for the purposes of obtaining legal advice, as well as opinions given by the attorneys based upon and reflecting those facts. The withheld information reflects confidential communications with Government attorneys who are providing legal advice to Department officials, and that confidentiality has been maintained. For these reasons, portions of the withheld information are exempt from release under Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the attorney-client privilege.

### FOIA Exemption 7(A) – Law Enforcement Information

34. FOIA Exemption 7 protects from disclosure all "records or information compiled for law enforcement purposes" that could reasonably be expected to cause one of the six harms outlined in the Exemption's subparts. 5 U.S.C. § 552(b)(7). The Statute states in relevant part that the FOIA does not apply to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (A)

could reasonably be expected to interfere with enforcement proceedings." The law to be enforced for FOIA Exemption 7 purposes includes administrative, regulatory, civil, and criminal law.

35. Before an agency can invoke any of the harms enumerated in FOIA Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. The Department of Justice, a federal law enforcement agency, has an ongoing criminal case and investigation against Tamimi related to her alleged participation in a 2001 suicide bomb attack in Israel that resulted in the death of U.S. nationals. Certain records in the case, which pertain to that criminal investigation, were compiled for law enforcement purposes.

36. Application of Exemption 7(A) requires the existence of law enforcement records or information; a pending or prospective law enforcement proceeding; and a reasonable expectation that release would interfere with the enforcement proceeding. The request for the extradition of Tamimi to the United States is still pending, and the ongoing criminal investigation into Tamimi's alleged offenses remains an active law enforcement proceeding. Thus, the Department of Justice requested withholding of information related to the criminal complaint and investigation against Tamimi because premature disclosure of that information could harm the ongoing investigation and interfere with efforts to extradite Tamimi to the United States. Specifically, disclosure of this information could interfere with the United States ability to work cooperatively with the Jordanian government to extradite Tamimi.

### No Ability to Segregate Additional Non-Exempt Information

37. The Department undertook a careful line-by-line review of all documents in this case. The Department looked for reasonable segregation of non-exempt information and

implemented segregation when possible. Otherwise, the Department determined that no additional segregation of meaningful information in the documents could be made without disclosing information warranting protection under the law. As a result of this review, the Department provided Plaintiff with all non-exempt responsive information.

### III. CONCLUSION

38.　In summary, the Department searched all locations reasonably likely to contain documents responsive to Plaintiff's FOIA request. The Department located 62 records responsive to the request of which 29 records are being challenged. Of those challenged records, the Department withheld 25 records in part and withheld 4 records in full.

***

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 28 day of October 2024, Washington, D.C.

Timothy J. Kootz