**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————

FRIMET ROTH and ARNOLD ROTH,    )
                                )
            Plaintiffs,          )
                                )
        v.                       )        Civil Action No. 20-3838 (ABJ)
                                )
U.S. DEPARTMENT OF STATE,        )
                                )
            Defendant.           )
———————————————————————         )

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF**
**PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................1

      A.    The Terrorist Attack................................................................................1

      B.    Plaintiffs' FOIA Request and the Parties' Correspondence .................................2

LEGAL STANDARDS ........................................................................................................4

ARGUMENT .......................................................................................................................5

I.      THE STATE DEPARTMENT'S *VAUGHN* INDEX IS DEFICIENT ...........................5

      A.    THE LIST OF DOCUMENTS ON THE STATE DEPARTMENT'S
            *VAUGHN* INDEX IS INCOMPLETE ...................................................................6

      B.    THE STATE DEPARTMENT'S *VAUGHN* INDEX IS CONCLUSORY
            AND LACKS REASONABLE DETAIL .................................................................6

            1.    The State Department's Invocations of Exemption 1 Are Deficient
                 As a Matter of Law (Documents 1 through 14).............................................7

            2.    The State Department's Invocations of Exemption 5 are Deficient
                 As a Matter of Law (Documents 1-5, 15, 16, 19, and 21-29)......................9

            3.    The State Department's Invocations of Exemption 7 are Deficient
                 As a Matter of Law (Documents 1-5, 16, 17, 18, 20, 25)........................10

II.      THE STATE DEPARTMENT IMPROPERLY WITHHELD PORTIONS OF
         SPECIFIC DOCUMENTS ...............................................................................11

      A.    The State Department Improperly Withheld A Portion of Document 20
            under Exemption 7(A) ......................................................................................11

      B.    The State Department Improperly Withheld A Portion of Document 28
            under Exemption 5 ............................................................................................15

      C.    The State Department Improperly Withheld A Portion of Document 21
            Under Exemption 5 ...........................................................................................18

      D.    The State Department Improperly Withheld Portions of Documents 6 and
            7 under Exemption 1 .........................................................................................18

E.    The State Department Improperly Withheld Document 29 under
Exemption 5 ............................................................................................................20

III.    THE STATE DEPARTMENT SHOULD BE ORDERED TO PRODUCE
DOCUMENTS 17, 18, 27 AND 29 ...................................................................................21

CONCLUSION ............................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ACLU v. DOD,*
435 F. Supp. 3d 539 (S.D.N.Y. 2020) ....................................................................................18

*Am. Immigration Council v. DHS,*
905 F. Supp. 2d 206 (D.D.C. 2012) .................................................................................4, 17

*Am. Immigration Council v. DHS,*
950 F. Supp. 2d 221 (D.D.C. 2013) .........................................................................................9

*Arthur Andersen & Co. v. IRS,*
679 F.2d 254 (D.C. Cir. 1982) ........................................................................................16, 20

*Bartko v. DOJ,*
898 F.3d 51 (D.C. Cir. 2018) ................................................................................................12

*Bevis v. Dep't of State,*
801 F.2d 1386 (D.C. Cir. 1986) ......................................................................................10, 11

*Brayton v. Office of U.S. Trade Rep.,*
641 F.3d 521 (D.C. Cir. 2011) ................................................................................................4

*Campbell v. DOJ,*
164 F.3d 20 (D.C. Cir. 1998) ..................................................................................................8

*Coastal States Gas Corp. v. DOE,*
617 F.2d.854 (D.C. Cir. 1980) ..............................................................................................16

*CREW v. DOJ,*
746 F.3d 1082 (D.C. Cir. 2014) ...........................................................................11, 12, 14, 15

*Curran v. DOJ,*
813 F.2d 473 (1st Cir. 1987) .................................................................................................12

*Davin* v. *U.S. Dep't of Just.,*
60 F.3d. 1043 (3d. Cir 1995) ...................................................................................................5

*Dep't of the Air Force v. Rose,*
425 U.S. 352 (1976) .................................................................................................................4

*DeSilva v. HUD,*
36 F. Supp. 3d 65 (D.D.C. 2014) ............................................................................................4

*Elec. Priv. Info. Ctr. v. DOJ*,
    511 F. Supp. 2d 56 (D.D.C. 2007) ......................................................................21

*Freedom of Press Found. v. DOJ*,
    493 F. Supp. 3d 251 (S.D.N.Y. 2020) ................................................................17

*Heffernan v. Azar*,
    317 F. Supp. 3d 94 (D.D.C. 2018) ......................................................................17

*Hiken v. DOD*,
    2012 WL 13118568 (N.D. Cal. Feb. 3, 2012) ...................................................8, 9

*Holcomb v. Powell*,
    433 F.3d 889 (D.C. Cir. 2006) ..............................................................................4

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ......................................................................16, 18

*Juarez v. DOJ*,
    518 F.3d 54 (D.C. Cir. 2008) ..............................................................................12

*Judicial Watch, Inc. v. DOJ*,
    365 F.3d 1108 (D.C. Cir. 2004) ............................................................................5

*Judicial Watch Inc. v. U.S. Post. Serv.*,
    297 F. Supp. 2d 252 (D.D.C. 2004) ....................................................................16

*Judicial Watch v. FDA*,
    449 F.3d 141 (D.C. Cir. 2006) ............................................................................16

*King v. DOJ*,
    830 F.2d 210 (D.C. Cir. 1987) ..........................................................................5, 6

*Lehr v. NTSB*,
    569 F.3d 964 (9th Cir. 2009) ...........................................................................5, 14

*Mobely v. CIA*,
    924 F. Supp. 2d 24 (D.D.C. 2013) ........................................................................7

*PHE, Inc. v. U.S. Dep't of Just.*,
    983 F.2d 248 (D.C. Cir. 1993) ..............................................................................5

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ............................................................................4

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ..........................................................................12

*Tax Analysts v. IRS*,
    294 F.3d 71 (D.C. Cir. 2002) ................................................................21

*Weiner v. FBI*,
    943 F. 2d 972 (9th Cir. 1991) ...............................................................7

*Wilderness Soc'y v. DOI*,
    344 F. Supp. 2d 1 (D.D.C. 2004) .........................................................20

*Wisdom v. U.S. Tr. Program*,
    232 F. Supp. 3d 97 (D.D.C. 2017) ........................................................4

**STATUTES & RULES**

5 U.S.C. § 552(a)(3) ..................................................................................4

5 U.S.C. § 552(b)(1) .............................................................................7, 8

5 U.S.C. § 552(b)(5) ..................................................................................9

5 U.S.C. § 552(b)(7)(A) ..........................................................................10

18 U.S.C. § 2332a(a)(1) ......................................................................2, 13

E.O. 13526 § 1.4 .................................................................................7, 8

Fed. R. Civ. P. 56(a) ..................................................................................4

**OTHER AUTHORITIES**

*Ahlam Tamimi's 16th Victim*,
    https://www.jns.org/jns/palestinian-terrorism/23/6/2/292338/ ...................1

*Released Terrorist Ahlam Tamimi, Sentenced to 16 Life Terms in Prison, Takes Pride in the Number of Casualties She Caused and Proclaims: I Would Do It Again Today*, MEMRI (Oct. 19, 2011),
    https://www.memri.org/tv/released-terrorist-ahlam-tamimi-sentenced-16-life-terms-prison-takes-pride-number-casualties-she ...................................15

## INTRODUCTION

Plaintiffs Frimet and Arnold Roth ("Plaintiffs") cross-move for summary judgment on the non-applicability of each FOIA Exemption invoked by the State Department either explicitly on its *Vaughn* index, or implicitly through redactions on documents it failed to list on its *Vaughn* index. *See* ECF No. 50-4 ("*Vaughn* index"). For the same reasons, Plaintiffs oppose the State Department's summary judgment motion in full.

Plaintiffs also respectfully request that the Court, to the extent it deems necessary, conduct an in-camera review of all Documents in unredacted form, with a particular emphasis on the Documents described in Point II, *infra*, prior to ruling on the parties' motions.

## FACTUAL BACKGROUND[1]

### A. The Terrorist Attack

On August 9, 2001, Ahlam Al-Tamimi masterminded a suicide bombing of a Sbarro Pizzeria in central Jerusalem which injured over 100 people and killed 16 others, including eight children. ECF No. 1 at ¶¶ 8-12 ("Compl."). The attack killed three American nationals, including Malka Chana Roth, Plaintiffs' 15-year-old daughter. *Id.* at ¶¶ 1, 9-10.[2] Tamimi was promptly arrested by Israeli authorities, and she pled guilty and was sentenced by an Israeli court to sixteen consecutive life terms in prison. LaBerge Decl. Ex. 39. In 2011, she was released from prison as part of an extortionate prisoner exchange with Hamas and, since that date, she has resided in the

---

[1] Relevant facts are contained in the Complaint, ECF No. 1, and in Plaintiffs' Statement of Undisputed Facts, and are supported by the Declaration of Marielle LaBerge (the "LaBerge Declaration" or "LaBerge Decl."), sworn to November 26, 2024, and the exhibits annexed thereto, filed contemporaneously with this memorandum of law. Citations to exhibits below are to the exhibits annexed to the LaBerge Declaration.

[2] The third American victim, Chana Nachenberg, survived in a vegetative state for 22 years after Tamimi's attack, until finally succumbing in June 2023. *See generally Ahlam Tamimi's 16th Victim*, https://www.jns.org/jns/palestinian-terrorism/23/6/2/292338/.

Hashemite Kingdom of Jordan ("Jordan"), where she is acclaimed as a national hero and was a celebrated TV host.  Compl. ¶¶ 13-14.  Tamimi admitted to the bombing, and she celebrates it as a great success.  *Id.* at ¶ 12.

On July 15, 2013, the Department of Justice (the "DOJ") filed a criminal complaint against Tamimi under seal alleging that she conspired to use, and used, a weapon of mass destruction against a United States national outside the United States, in violation of 18 U.S.C. § 2332a(a)(1). Plaintiffs' Statement of Undisputed Material Facts ¶ 1 ("Plaintiffs' SUF").  The United States requested that Jordan extradite Tamimi to the U.S. to stand trial for her crimes pursuant to a bilateral extradition treaty entered between the U.S. and Jordan in 1995.  Plaintiffs' SUF ¶ 4. Jordan has repeatedly refused to comply with the request, and on March 21, 2017, Jordan's Court of Cassation ruled that the Treaty was unenforceable as it had not been ratified by the Jordanian parliament.  Plaintiffs' SUF ¶ 5.  This decision came one week after the DOJ unsealed its criminal complaint against Tamimi and officially designated her as an FBI Most Wanted Terrorist. Plaintiffs' SUF ¶¶ 2, 5.  The United States rejects Jordan's position that the Treaty is not in effect and holds the Treaty as being valid and in force.  Compl. ¶ 17.

### B. Plaintiffs' FOIA Request and the Parties' Correspondence

More than twenty-three years after committing an act of international terrorism and murdering Malka and 15 others, Tamimi remains free and enjoys a life of high status, harbored by Jordan, a U.S. ally.  *Id.* at ¶ 22.  Plaintiffs have dedicated much of their lives to seeking justice for their murdered child and the other victims of Tamimi's terror.  *See, e.g.*, LaBerge Decl. Ex. 40 at 19.  They have tirelessly called attention to Jordan's continued harboring of this FBI Most Wanted Terrorist murderer of Americans and Israelis.

On August 7, 2020, in furtherance of these efforts, Plaintiffs made a FOIA request to the State Department for certain records relating to the extradition treaty between the U.S. and Jordan and Jordan's continued harboring of this notorious terrorist. LaBerge Decl. Ex. 35. The State Department has refused to provide Plaintiffs with a significant amount of responsive information it has in its possession, justifying its decisions to withhold materials through FOIA Exemptions 1, 5, and 7(A).

Plaintiffs have engaged in numerous private communications with the State Department seeking clarification and direction on what is being done to bring Tamimi to justice, but the State Department's responses have not been satisfactory. First, Plaintiffs were forced to file this action because the State Department ignored the FOIA request for months. Compl. ¶ 2. Then, despite the delay, Plaintiffs gave the State Department numerous extensions of time to produce responsive materials, and they also agreed to narrow and prioritize searches in the spirit of cooperation. *See e.g.* ECF No. 17 (March 4, 2021 Status Report); ECF No. 18 (May 5, 2021 Status Report); ECF No. 20 (July 6, 2021 Status Report); ECF No. 21 (September 3, 2021 Status Report); ECF No. 22 (November 2, 2021 Status Report); ECF No. 23 (January 10, 2022 Status Report); ECF No. 24 (March 11, 2022 Status Report); ECF No. 25 (May 11, 2022 Status Report); ECF No. 26 (July 11, 2022 Status Report); ECF No. 27 (September 9, 2022 Status Report); ECF No. 28 (November 10, 2022 Status Report); ECF No. 29 (January 9, 2023 Status Report); ECF No. 30 (March 10, 2023 Status Report).

After reaching an agreement about the scope of the searches, and after waiting nearly three years for a complete response to their FOIA request, Plaintiffs agreed that the State Department could provide them with a *Vaughn* index describing its reasoning for certain withholdings pursuant to FOIA exemptions 1, 5, and 7(A). *See* ECF No. 31 (May 10, 2023 Status Report); ECF No. 32

(July 10, 2023 Status Report); ECF No. 33 (September 8, 2023 Status Report); ECF No. 34 (December 08, 2023 Status Report); ECF No. 37 (February 8, 2024 Status Report); ECF No. 38 (April 8, 2024 Status Report); ECF No. 39 (June 7, 2024 Status Report). When the State Department finally did provide the Plaintiffs with a *Vaughn* index, it insufficiently explained why Exemptions 1, 5, and 7(A) applied, and Plaintiffs explained these deficiencies in an April 2, 2024 letter. LaBerge Decl. Ex. 36. In response, the State Department provided a revised *Vaughn* index, which it has submitted to the Court with its summary judgment motion. ECF No. 50-4. For the reasons detailed below, the explanations for the State Department's withholdings in the revised *Vaughn* index are legally inadequate.

## LEGAL STANDARDS

A motion for summary judgment must be granted when the movant shows that there is "no genuine issue as to any material fact" such that the movant is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Am. Immigration Council v. DHS*, 905 F. Supp. 2d 206, 212 (D.D.C. 2012) (citing *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)). But "the agency bears the ultimate burden of proof" in FOIA cases. *Wisdom v. U.S. Trustee Program*, 232 F. Supp. 3d 97, 112 (D.D.C. 2017). And for an agency to satisfy its summary judgment burden "based solely on" its own affidavits, those affidavits must be "reasonably detailed" and "nonconclusory." *DeSilva v. HUD*, 36 F. Supp. 3d 65, 69-70 (D.D.C. 2014) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Because FOIA was enacted to "open agency action to the light of public scrutiny," *Dep't of the Air Force v. Rose,* 425 U.S. 352, 360 (1976), agencies must provide all records covered by a FOIA request unless one of FOIA's nine exemptions applies, 5 U.S.C. § 552(a)(3). And for the

same reason, these exemptions must be narrowly construed.  *Judicial Watch, Inc. v. DOJ,* 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Lehr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009).

## ARGUMENT

### I.     THE STATE DEPARTMENT'S *VAUGHN* INDEX IS DEFICIENT.

Plaintiffs agreed not to challenge certain categories of exemptions asserted by the State Department in responding to the FOIA request, and they agreed to give the State Department numerous extensions to produce their *Vaughn* index, but the State Department nevertheless produced an index that fails to meet its legal obligations.  The *Vaughn* index is legally deficient for two fundamental reasons.

*First*, the list of documents on the index is incomplete.  *See King v. DOJ*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) ("A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information.") (emphasis in original).

*Second*, the *Vaughn* index fails to provide Plaintiffs and the Court with "a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *See Davin* v. *U.S. Dep't of Justice*, 60 F.3d 1043, 1050 (3d. Cir 1995); *see also King*, 830 F.2d at 224 ("Categorical descriptions of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate."); *PHE, Inc. v. U.S. Dep't of Justice,* 983 F.2d 248, 252 (D.C. Cir. 1993) (summary judgment for Government inappropriate when *Vaughn* index provides insufficient information for the Court to determine whether reasonably segregable information was released).

## A. THE LIST OF DOCUMENTS ON THE STATE DEPARTMENT'S *VAUGHN* INDEX IS INCOMPLETE.

The *Vaughn* index identifies 29 documents in total; 25 withheld in part and 4 withheld in full.  *See* ECF No. 50-4.  However, the index does not include any reference to several other documents the State Department produced to Plaintiffs in redacted form, and, therefore, the State Department has not explained at all the basis for the redactions on those documents.  Specifically, the following documents were produced to Plaintiffs, with heavy redactions, on the following respective dates, but none of them appear on the *Vaughn* index:

- A-330393 produced on May 14, 2021, LaBerge Decl. Ex. 30

- A-330447 produced on May 14, 2021, LaBerge Decl. Ex. 31

- A-330289 produced on June 11, 2021, LaBerge Decl. Ex. 32

- B-1942770 produced on May 16, 2022, LaBerge Decl. Ex. 33

- A-330471 produced on August 15, 2022, LaBerge Decl. Ex. 34

These documents have "(b)(5)" redactions on them, but the redactions themselves do not delineate *which* Exemption 5 privilege or doctrine purportedly applies.  LaBerge Decl. Exs. 30-34.  Plainly, the State Department has not met its obligations and these documents should be produced in their entirety without (b)(5) redactions.  *King*, 830 F.2d at 224.[3]

## B. THE STATE DEPARTMENT'S *VAUGHN* INDEX IS CONCLUSORY AND LACKS REASONABLE DETAIL.

The second fundamental deficiency with the State Department's *Vaughn* index is that it fails to provide Plaintiffs and the Court with anything more than the ability to guess the actual bases for any withholding decisions.  Clearly, the agency is relying on Exemptions 1, 5, and 7(A),

---

[3] Plaintiffs have asked the State Department to explain these discrepancies but have received no substantive response.  LaBerge Decl. Ex. 38.

which are more fully explained below.  But the State Department systematically glosses over (i) the several underlying classification criteria that can give rise to a valid Exemption 1 withholding and (ii) the several underlying privileges and doctrines that can give rise to a valid Exemption 5 withholding.  Furthermore, in invoking Exemption 7(A), the State Department fails to provide sufficiently tailored category-by-category explanations as required by D.C. Circuit precedent.

### 1.  The State Department's Invocations of Exemption 1 Are Deficient As a Matter of Law (Documents 1 through 14). [4]

FOIA Exemption 1 covers materials "specifically authorized under criteria established by an executive order to be kept secret in the interest of national defense or foreign policy."  5 U.S.C. § 552(b)(1).  In its *Vaughn* index, the State Department lists two sections of Executive Order 13526 next to each of the fourteen documents it seeks to partially withhold under Exemption 1: § 1.4(b), which authorizes classification of "foreign government information," defined as information provided to the U.S. Government by a foreign government or its elements, with the expectation that the information, its source, or both, will be held in confidence; and § 1.4(d), which permits classification of information concerning "foreign relations or foreign activities of the United States, including confidential sources."[5] *See*  ECF No. 50-4 at 1-5 (entries for Documents 1-14).

Not all information exchanged with foreign governments is implicitly confidential. *See Mobely v. CIA*, 924 F. Supp. 2d 24, 59 (D.D.C. 2013).  Rather, the government has the burden of "provid[ing] the court and [Plaintiffs] with information sufficient to determine whether the source was truly a confidential one and why disclosure of the withheld information would lead to exposure of the source.'"  *Weiner v. FBI,* 943 F. 2d 972, 980 (9th Cir. 1991).  While information provided

---

[4] *See* LaBerge Decl. Exs. 1-14; *see also* ECF No. 50-4 at 1-5 (Documents No. 1-14).

[5] Both provisions apply only when "unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security."  E.O. 13526 § 1.4.

by the government in a *Vaughn* index or in a declaration is afforded "substantial weight," in evaluating the accuracy of the State Department's classifications, explanations must "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness to the withholding." *Campbell v. DOJ,* 164 F.3d 20, 30-31 (D.C. Cir. 1998).

Here, however, the State Department has provided one prepackaged explanation for why each of Documents 1 through 14 is entitled to protection under both §§ 1.4(b) and (d), essentially treating those different provisions as coextensive when, in fact, they are not.[6] *See Hiken v. DOD*, 2012 WL 13118568, at *14 (N.D. Cal. Feb. 3, 2012) (granting plaintiff's cross-motion for summary judgment where Department of Defense "fail[ed] to provide anything other than conclusory reasons why disclosure could harm national security including this country's foreign relations" and where "[t]he same reasons" used "for section 1.4(b) are used for section 1.4(d)"). Furthermore, the State Department's Exemption 1 redactions all bear the "(b)(1)" label, but they do not further specify which strand of Exemption 1 applies. Plaintiffs' SUF ¶ 6. The law

---

[6] The State Department wrote the following, or a substantively identical version of the following, for each document subject to Exemption 1: "The Department withheld these documents in part under Freedom of Information Act ("FOIA") Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(b) and (d), which pertain to foreign government information and foreign relations or foreign activities of the United States. The withheld material relates to confidential discussions about Tamimi between the United States and the Government of Jordan and related information regarding the pending request for her extradition to the United States. Diplomatic exchanges are premised upon, and depend upon, an expectation of confidentiality. The inability of the United States to maintain the confidentiality of its diplomatic exchanges including the one here with the Jordanian Government, would inevitably chill relations with other governments and could reasonably be expected to cause serious damage to U.S. national security by diminishing our access to vital sources of information. Foreign governments could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest." *See* ECF No. 50-4 at 1-5 (Document Nos. 1-14); *see also* LaBerge Decl. Exs. 1-14.

recognizes separate bases for redaction for a reason; Plaintiffs were entitled to a more meaningful opportunity to contest the State Department's redactions. *See Hiken*, 2012 WL 13118568, at *14.

### 2. The State Department's Invocations of Exemption 5 are Deficient As a Matter of Law (Documents 1-5, 15, 16, 19, and 21-29).[7]

The State Department has invoked FOIA Exemption 5 with respect to several documents. ECF No. 50-4 at 1 (entry for Documents 1-5), 5-6 (entries for Document 15-16), 7-8 (entry for Document 19), 9-14 (entries for Documents 21-29).[8] Although the *Vaughn* index lists which of the Exemption 5 elements purportedly apply,[9] on the documents themselves, the exemption is simply identified as "(b)(5)." *See, e.g.,* LaBerge Decl. Exs. 21-24. No individual redaction specifies whether it is justified by, for instance, the deliberative process privilege specifically, the work product doctrine specifically, or both, or what portion of the redacted document is redacted on what basis. Plaintiffs' SUF ¶ 7. It is therefore impossible to scrutinize the validity of any particular Exemption 5 redaction. *See American Immigration Council v. DHS*, 950 F. Supp. 2d 221, 240 (D.D.C. 2013) ("For some of the *Vaughn* entries, it is unclear whether Defendants invoke the deliberative-process privilege at all, a confusion that is only exacerbated by conflicting statements in Defendants' Reply and on the marked portions of the documents submitted for *in camera* review.").

---

[7] *See* LaBerge Decl. Exs. 1-5, 15, 16, 19, 21-29; *see also* ECF No. 50-4 at 1 (entries for Documents 1-5), 5-6 (entries for Documents 15-16), 7-8 (entry for Document 19), 9-14 (entries for Documents 21-29).

[8] Exemption 5 allows federal agencies to withhold "inter-agency or intra-agency memorandums or letters" that are protected by legal privileges, like the deliberative process privilege, the attorney-client privilege, and the attorney work product doctrine. 5 U.S.C. § 552(b)(5).

[9] For example, the State Department invokes the deliberative process privilege and work product doctrine for Documents 21-24. ECF No. 50-4 at 9 (entry for Documents 21-24).

The fact that two different Exemption 5 doctrines may apply to different pieces of information within the same document does not mean that both doctrines apply to the entire document. At a minimum, these documents should be submitted to the Court for *in camera* review or simply ordered to be produced.

### 3. The State Department's Invocations of Exemption 7 Are Deficient As a Matter of Law (Documents 1-5, 16, 17, 18, 20, 25).[10]

The State Department relies on FOIA Exemption 7(A) as a basis for withholding ten documents.[11] ECF No. 50-4 at 1-2 (entry for Documents 1-5), 6-9 (entries for Documents 16-18, 20), 10-11 (entry for Document 25). It has copied and pasted the same exact rationale for all ten documents. *Id.*[12] But under D.C. Circuit law, if an agency wishes to offer generic reasons for withholding documents under Exemption 7(A), the agency "has a three-fold task. First, it must define [] categories [of documents] functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings." *Bevis*

---

[10] *See* LaBerge Decl. Exs. 1-5, 16, 17, 18, 20; *see also* ECF No. 50-4 at 2 (entry for Documents 1-5), 6-9 (entries for Documents 16-18, 20), 11 (entry for Document 25).

[11] Exemption 7(A) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

[12] "The Department additionally withheld portions of these documents pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A), which protects records or information compiled for law enforcement purposes, the disclosure of which would reasonably be expected to interfere with enforcement proceedings. Certain information in these communications was generated for the purpose of informing DOJ's efforts to extradite Tamimi from Jordan to the United States in connection with DOJ's criminal case against her related to her alleged participation in a 2001 suicide bomb attack in Israel that resulted in the death of U.S. nationals. The premature release of that information could reasonably be expected to interfere with DOJ's ongoing criminal investigation and efforts to extradite Tamimi to the United States. The disclosure of the information could also reasonably be expected to compromise the United States ability to continue to work cooperatively with the Jordanian Government to extradite Tamimi." *Id.* The "ongoing criminal investigation" issue is addressed in Point II.A., *infra*.

*v. Dep't of State*, 801 F.2d 1386, 1389-90 (D.C. Cir. 1986); *accord CREW v. DOJ*, 746 F.3d 1082, 1098 (D.C. Cir. 2014).

It is clear from the face of the *Vaughn* index that the State Department has used the same exact rationale to justify withholding documents that have vastly different characteristics. *Compare* ECF No. 50-4 at 7 (entry for Documents 17-18 (describing email chain among Jordanian and U.S. officials)), *with id.* at 10-11 (entry for Document 25 (describing email chain among U.S. officials only)); *see also* Plaintiffs' SUF ¶¶ 8, 9. The State Department has failed to satisfy its burden with respect to Exemption 7(A) and documents withheld under this exemption should be produced.

## II.   THE STATE DEPARTMENT IMPROPERLY WITHHELD PORTIONS OF SPECIFIC DOCUMENTS.

For the below reasons, the Court should deny Defendants' Motion for Summary Judgment with respect to portions of Documents 6, 7, 20, 21, 28, and 29 and grant Plaintiffs' cross-motion for summary judgment with respect to these documents. *See* LaBerge Decl. Exs. 6, 7, 20, 21, 28, 29. Plaintiffs respectfully request that, if necessary, the Court conduct an in-camera review of these documents in unredacted form before ruling on the parties' motions.

### A. The State Department Improperly Withheld A Portion of Document 20 under Exemption 7(A).

Document 20 is an email chain dated March 15, 2017, containing a summary timeline of the U.S. government's engagement with the Jordanian government with respect to Tamimi. *See* LaBerge Decl. Ex. 20 at 1 ("Subject: Timeline of U.S. engagement w/ GoJ on Tamimi"); *see also* ECF No. 50-4 at 8-9 (entry for Document 20). The email containing the timeline was sent by Henry T. Wooster, then-Deputy Chief of the U.S. embassy in Jordan, to Fayiz Khouri, a high-level official in Jordan's Ministry of Foreign Affairs. LaBerge Decl. Ex. 20 at 1-2. Mr. Wooster then forwarded the email to his colleagues in the Amman embassy, including Rohit Nepal, a Political

Counselor. *Id.* at 1. Mr. Nepal then forwarded the email to his State Department colleagues who work in the Bureau of Near Eastern Affairs, stating: "Desk friends - FYI in case you need the details on our engagement re Tamimi. We have provided to GoJ." *Id.*

The State Department relies solely on Exemption 7(A) to support its redaction of the portion of the email chain containing the timeline. *Id.* at 3; *see also* ECF No. 50-4 at 8-9 (entry for Document 20); Plaintiffs' SUF ¶ 10. In withholding records under this exemption, the Government must "carefully explain[]" to the district court "*how*" the release would interfere with enforcement proceedings. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007) (quoting *Curran v. DOJ*, 813 F.2d 473, 476 (1st Cir. 1987)). Furthermore, "Exemption 7(A) is temporal in nature;" there is "no reason to protect yellowing documents contained in long-closed files." *CREW v. DOJ*, 746 F.3d 1082, 1097 (D.C. Cir. 2014). To be sure, "so long as [an] investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies." *Id.* at 1098 (quoting *Juarez v. DOJ*, 518 F.3d 54, 59 (D.C. Cir. 2008)). But "the vague nature of [a] mention of ongoing investigations," combined with "passage of time … since the events underlying the investigation," combined with the absence of evidence of an actual ongoing investigation, forecloses the availability of Exemption 7(A). *Id.* Finally, where an agency "does not specialize in law enforcement, its attempt to shield its records under Exemption 7[] merits no deference." *Bartko v. DOJ*, 898 F.3d 51, 64 (D.C. Cir. 2018).

The State Department does not "specialize in law enforcement," so, initially, its invocation of Exemption 7 merits no deference. Notably, the DOJ—which *does* specialize in law enforcement—unsealed its criminal complaint against Tamimi the day before this email exchange

occurred, reflecting the DOJ's judgment that the Tamimi complaint deserved more, not less, publicity.  Plaintiffs' SUF ¶ 2; LaBerge Decl. Ex. 39.

Moreover, the unsealing of the complaint suggests that DOJ's investigation had been essentially completed, perhaps years earlier.  The facts underlying Tamimi's violation of 18 U.S.C. §§ 2332a(a)(1) had obviously been investigated as of July 2013, when DOJ filed the complaint under seal.  Plaintiffs' SUF ¶ 3.  Again, there is nothing in the record to indicate that the years of delay—especially since 2017—were due to ongoing criminal investigation, separate from diplomatic activities to convince Jordan to extradite the fugitive.  Unsurprisingly, when announcing publicly in 2017 the unsealing of the complaint, DOJ suggested that its investigation was indeed complete, stating that "[t]he investigation into this matter *was conducted* by the FBI's Washington Field Office."  LaBerge Decl. Ex. 39 at 3 (emphasis added).

In support of its withholding, the State Department contends "the Department of Justice requested withholding of information related to the criminal complaint."  ECF No. 50-3 at ¶¶ 35, 36 ("Kootz Decl.").  But this hearsay statement is ambiguous and may refer only to the preparation and filing of the pleading in 2013 or, at most, the decision to unseal it in July 2017.  If releasing Document 20 or any other documents implicated an ongoing criminal investigation, Plaintiffs would have expected DOJ to have supported the exemption directly by declaration.

Nor has the State Department articulated a defensible explanation for its reliance on Exemption 7(A).  In the relevant portion of its *Vaughn* index, the State Department just recites the elements of Exemption 7(A) then states that the information was "specifically compiled for the purpose of facilitating the United States request for Tamimi's extradition" and cautions that "premature release of that information could reasonably be expected to interfere with DOJ's ongoing criminal investigation and efforts to extradite Tamimi."  ECF No. 50-4 at 8-9 (entry for

13

Document 20).   As explained previously, the State Department has employed the exact same rationale for nine other documents.  *See* Point I.B.3, *supra.*

The State Department's effort to conflate diplomatic actions to secure Tamimi's extradition with a "law enforcement proceeding" runs afoul of the principle that FOIA's philosophy of disclosure requires "narrowly" construing the exemptions.[13]  *See Lehr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009).  In any event, it is well-known that Jordan's highest court already ruled that the 1995 bilateral extradition treaty between the United States and Jordan is unenforceable.  In other words, even if efforts to secure Tamimi's extradition can be characterized as a "law enforcement proceeding," the specific proceeding to which this document would relate terminated on March 21, 2017 when Jordan's Court of Cassation issued its decision.  *See CREW*, 746 F.3d at 1097 ("The proceeding must remain pending at the time of our decision.").  Under these circumstances, disclosure would thus be anything but "premature."

Nor can the State Department overcome the temporal restrictions of Exemption 7(A).  The timeline at issue in Document 20 was created and sent in March 2017, so it does not contain any information more recent than March 2017; there is no risk of disclosure of any ongoing investigatory activities that, in any case, were complete before (perhaps long before) the document was prepared.  Plaintiffs' SUF ¶ 3.  The Jordanian Court of Cassation issued a ruling on the enforceability of the U.S.-Jordan extradition treaty six days after the date of this email exchange, and now over seven years ago.  Plaintiffs' SUF ¶ 5.  And the events giving rise to the prosecution of Tamimi happened over two decades ago, further weakening the State Department's reliance on Exemption 7(A).  *CREW*, 746 F.3d at 1098 (reliance on Exemption 7(A) inappropriate because

---

[13] It should be emphasized that the State Department does not to rely on Exemption 1 or Executive Order 13526 § 1.4(b) or (d), which relate to diplomatic communications.  Essentially, the State Department is relying on nothing as a basis for withholding the timeline.

"[i]t has been 30 months since the DOJ filed its Declaration and many more since the events underlying the investigation took place").

To be clear, the only "law enforcement proceeding" the State Department invokes is the "ongoing criminal case and investigation against Tamimi related to her alleged participation in a 2001 suicide bomb attack in Israel that resulted in the death of U.S. nationals." Kootz Decl. ¶¶ 35, 36. But there is no question that Tamimi committed this crime. She was convicted in an Israeli court and served a prison sentence for the same underlying act. LaBerge Decl. Ex. 39 at 2. She admits and celebrates her murder of sixteen people, including eight children and three American citizens. Compl. ¶ 12; *see also Released Terrorist Ahlam Tamimi, Sentenced to 16 Life Terms in Prison, Takes Pride in the Number of Casualties She Caused and Proclaims: I Would Do It Again Today*, MEMRI (Oct. 19, 2011), https://www.memri.org/tv/released-terrorist-ahlam-tamimi-sentenced-16-life-terms-prison-takes-pride-number-casualties-she. ("I do not regret what happened. Absolutely not. This is the path. I dedicated myself to Jihad for the sake of Allah, and Allah granted me success. … Do you want me to denounce what I did? That's out of the question. I would do it again today, and in the same manner.").

For the foregoing reasons, the Court should grant Plaintiffs' cross-motion for summary judgment with respect to the inapplicability of Exemption 7(A) to Document 20, and for the same reasons, it must deny the State Department's motion for summary judgment with respect to the same document.

### B. The State Department Improperly Withheld A Portion of Document 28 under Exemption 5.

Document 28 on the *Vaughn* index is described as a "draft press guidance" that was circulated on March 15, 2017. LaBerge Decl. Ex. 28; ECF No. 50-4 at 13 (entry for Document 28). The State Department redacted a portion of this document under Exemption 5 pursuant to the

deliberative process privilege, which protects only material that is both "pre-decisional' and 'deliberative.'" *Judicial Watch v. FDA,* 449 F.3d 141, 151 (D.C. Cir. 2006) ("A document is pre-decisional if it was generated before an agency policy was adopted and deliberative if it 'reflects the give and take of the consultative process.'").  In relying on Exemption 5, the State Department must demonstrate what role the withheld portion of the document played in the deliberations, and it must identify the subject matter of the relevant deliberations.  *Coastal States Gas Corp. v. DOE,* 617 F.2d.854, 868 (D.C. Cir. 1980).  It must do this with enough specificity such that "the elements of the privilege can be identified."  *Judicial Watch Inc. v. U.S. Post. Serv.*, 297 F. Supp. 2d 252, 257 (D.D.C. 2004).  Purely factual information is not protected, *In re Sealed Case,* 121 F.3d 729, 737 (D.C. Cir. 1997), nor is information that is designed to be disclosed to the public.  *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257-58 (D.C. Cir. 1982).

According to the State Department's *Vaughn* index, Document 28 contains "information prepared for Department employees to respond to press inquiries about the criminal charges brought against Tamimi in connection with a 2001 suicide bomb attack in Jerusalem, Israel."  ECF No. 50-4 at 13 (entry for Document 28); LaBerge Decl. Ex. 28 at 1-2.  It is a list of mock questions the State Department anticipated receiving regarding the unsealing of Tamimi's criminal charges, along with the responses its employees should have delivered if asked those questions.  LaBerge Decl. Ex. 28 at 1-2.  The document was clearly meant to be "used by the agency in its dealings with the public," foreclosing Exemption 5.  *Arthur Andersen*, 679 F.2d at 257-58.

The first four mock questions and answers remain unredacted, but the State Department offers no explanation how or why the redacted material differs from the unredacted material.  ECF No. 50-4 at 13 (entry for Document 28).  It simply claims that the redacted information "predates any final determination about the specific responses that would be shared by the State Department

with the press." *Id.* However, it has not produced any "final version" of this press guidance, nor has it identified any deliberative communications over the guidance. If such communications exist, they have not been disclosed, even though they would be responsive to the FOIA request. Furthermore, the D.C. Circuit "has made clear that simply designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege." *Heffernan v. Azar*, 317 F. Supp. 3d 94, 125 (D.D.C. 2018).

Finally, the State Department fails to demonstrate that Document 28 reflects the views of any officials engaged in a deliberative, pre-decisional process. Document 28, which postdates the DOJ's press release announcing it had unsealed its criminal charges against Tamimi (LaBerge Decl. Ex. 28 at 1-2), is styled as a memorandum, and it is not qualified in any way as representing individual government officials' pre-decisional views. *See Freedom of Press Foundation v. DOJ*, 493 F. Supp. 3d 251, 262 (S.D.N.Y. 2020) (DOJ would "stretch [Exemption 5] too far" by relying on the exemption to withhold a document that "cannot be construed as the subjective views of only an individual staff member"). This guidance most likely represents the specific responses State Department employees would have provided to inquiries regarding the announcement that charges had been filed. It presumably reflects the Department's final public position on those charges, not any pre-decisional deliberations. *See Am. Immigr. Council v. DHS*, 905 F. Supp. 2d 206, 218 (D.D.C. 2012) (Exemption 5 not a basis for withholding slide deck prepared to train agency employees because the slide deck was "not a step in making a decision," but rather "a way to disseminate a decision already made," and it was "prepared ... to convey routine agency policies"). Absent further explanation or evidence of its pre-decisional nature, the State's withholding under Exemption 5 is unwarranted.

For the foregoing reasons, the Court should grant Plaintiffs' cross-motion for summary judgment with respect to the applicability of Exemption 5 to Document 28 and deny the State Department's motion with respect to the same document.

### C. The State Department Improperly Withheld A Portion of Document 21 Under Exemption 5.

The State Department partially withheld Document 21 under Exemption 5, citing both the deliberative process privilege and the attorney work-product doctrine. LaBerge Decl. Ex. 21; ECF No. 50-4 at 9 (entry for Document 21). With respect to a portion of the May 28, 2019, 4:28 PM email that appears in Document 21, the State Department's partial withholding is facially invalid. *See* Ex. 21 at 4. The State Department released this same email in an August 15, 2022 document production, but the redactions in that production do not match the redactions in Document 21. *Compare* LaBerge Decl. Ex. 21 at 4, *with* LaBerge Decl. Ex. 33 at 49-50. Specifically, the entry for "Nader Saadeh" is unredacted in the August 15, 2022 version, but it is redacted in Document 21. This calls into question the remainder of the State Department's (b)(5) redactions in Document 21. *See ACLU v. DOD*, 435 F. Supp. 3d 539, 555 (S.D.N.Y. 2020) ("Voluntary disclosures of all or part of a document may waive an otherwise valid FOIA exemption.").

Furthermore, the State Department cannot use Exemption 5 to redact "purely factual" information. *In re Sealed Case,* 121 F.3d 729, 737 (D.C. Cir. 1997). To the extent the "Nader Saadeh" entry is purely factual, that counsels that at least a portion of the redactions on Document 21 violate the State Department's obligations. This further strengthens the case for in-camera review.

### D. The State Department Improperly Withheld Portions of Documents 6 and 7 under Exemption 1.

The State Department withheld information pursuant to Exemption 1 in Documents 6 and 7. LaBerge Decl. Exs. 6, 7; ECF No. 50-4 at 2-3 (entry for Documents 6-7). According to the

*Vaughn* index, neither of these documents contains communications between the State Department and the Jordanian government—rather, they are documents shared among State Department officials.  ECF No. 50-4 at 2-3 (entry for Documents 6-7).  Specifically, they are described as consisting of "analysis and recommendations prepared by lower-level State Department officials for higher level State Department officials in preparation to discuss Tamimi with ambassadors for Jordan."  *Id.*  The State Department provides no description of how the analyses and recommendations in these documents were informed by confidential information shared between the United States and the Jordanian government.  Instead, it merely asserts that the withheld material "relates" to confidential discussions with the Jordanian government regarding Tamimi and her pending extradition.  *Id.*  This is the same vague description the State Department provides for the twelve other documents that it claims are subject to an Exemption 1 withholding.  *See* Point I.B.1, *supra*.  The State Department also relies on generic claims about the confidentiality of diplomatic exchanges as its explanation for the importance for the continued confidentiality of the withheld material.  ECF No. 50-4 at 2-3 (entry for Documents 6-7).

There is no further information about Documents 6 and 7.  *See id.*  For example, the absence of dates leaves Plaintiffs and the Court without critical information needed to assess the validity of the State Department's withholdings.  The dates of these documents are important because there have been significant public updates in the United States' dealings with Jordan with respect to Tamimi, such as: the United States' extradition request; Jordan's refusal to comply with that request and honor the extradition treaty; and the unsealing of the criminal complaint against Tamimi.  If any of the redacted information relates to and predates these events, the State must supplement its justifications for continued confidentiality, as much of the redacted information is likely already public.  By not providing (i) a date for these documents, (ii) more thorough

explanations of how the documents were obtained, or (iii) the importance of their continued confidentiality to national security, the State Department has failed to advance any basis for assessing the soundness of its legal position. For the foregoing reasons, the State must supplement its *Vaughn* index or provide Documents 6 and 7 to the Court for *in camera* review.

### E. The State Department Improperly Withheld Document 29 under Exemption 5.

The State Department withheld Document 29 in full under Exemption 5. ECF No. 50-4 at 13-14 (entry for Document 29). Document 29 is identified as a "draft letter prepared by the DOJ for the Jordanian Ministry of Justice."[14] *Id.* at 13 (entry for Document 29). The State Department relies on no other exemptions in connection with Document 29. Plaintiffs' SUF ¶ 11.

*First*, the State Department argues that Exemption 5 applies because the document is a draft letter. *Id.* But "simply designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege." *Wilderness Soc'y v. DOI*, 344 F. Supp. 2d 1, 14 (D.D.C. 2004) (citing *Arthur Andersen*, 679 F.2d at 257). Nor has the State Department identified any final version of this letter or indicated that one exists.

*Second*, the State Department argues that the document is deliberative "because it contains the DOJ's proposed language for the letter and reflects the author's selection of facts deemed significant enough to include in the letter, which itself is a deliberative process." ECF No. 50-4 at 13 (entry for Document 29). But the deliberative process privilege applies to deliberations within the federal government, and this letter was prepared for the Jordanian government; it does not appear to have been sent for further approval by another US agency. *Id.* Furthermore, this second argument is internally inconsistent, because the document cannot be both (1) the "DOJ's proposed

---

[14] As Plaintiffs are unable to identify which document in the State Department's various productions corresponds with Document 29, Plaintiffs are unable to attach the document as an exhibit.

language" and also (2) a mere reflection of a specific author's views.  And the document cannot be considered predecisional or deliberative if it represents the DOJ's settled view.  *Tax Analysts v. IRS*, 294 F.3d 71, 80 (D.C. Cir. 2002).

Accordingly, the Court should examine this document *in camera* to determine whether it reflects the "DOJ's proposed language" or is a mere reflection of the author's views.  At the very least, if any *portions* of the document reflect final DOJ policy, those portions should not be withheld.

### III.    THE STATE DEPARTMENT SHOULD BE ORDERED TO PRODUCE DOCUMENTS 17, 18, 27 AND 29.

Plaintiffs have thoroughly searched the State Department's productions, but they are unable to locate the documents referenced in the *Vaughn* index as Documents 17, 18, 27 and 29. LaBerge Decl. ¶¶ 18, 20, 28, 30; *see also* ECF No. 50-4 at 7 (entry for Documents 17-18), 12 (entry for Document 27), 13 (entry for Document 29).  Plaintiffs therefore respectfully request that the State Department be ordered to produce these documents or, in the alternative, indicate which pages in the production correspond to these documents.  *See Elec. Priv. Info. Ctr. v. DOJ*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007) ("OLC has withheld documents designated in its *Vaughn* index as OLC 95 and OLC 153-99.  The Court cannot find reference to these documents anywhere in DOJ's submissions outside of the index itself and will therefore require further detailed explanation regarding them.").

### CONCLUSION

For the foregoing reasons, the State Department's Motion for Summary Judgment should be denied, and for the same reasons, Plaintiffs' Cross-Motion for Summary Judgment should be granted.

Respectfully submitted,

By:    */s/ Margaret A. Dale*
       Margaret A. Dale (*pro hac vice*)
       Henrique N. Carneiro (*pro hac vice*)
       Proskauer Rose LLP
       11 Times Square
       New York, New York 10036
       mdale@proskauer.com
       hcarneiro@proskauer.com
       Tel: (212) 969-3315
       Tel: (212) 969-3993

       Marielle T. LaBerge (*pro hac vice*)
       Proskauer Rose LLP
       One International Place
       Boston, MA 02110
       mlaberge@proskauer.com
       Tel: (617) 526-9628


       */s/ Guy G. Brenner*
       Guy G. Brenner
       D.C. Bar No. 491964
       Proskauer Rose LLP
       1001 Pennsylvania Ave., N.W.
       Suite 600 South
       Washington, D.C. 20004-2533
       gbrenner@proskauer.com
       Tel: (202) 416-6830

       *Attorneys for Plaintiffs Frimet and Arnold Roth*