UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRIMET ROTH, et al., )
 )
Plaintiffs, )
 )
v. ) Civil Action No. 20-3838 (ABJ)
 )
U.S. DEPARTMENT OF STATE, )
 )
Defendant. )

## SECOND DECLARATION OF TIMOTHY J. KOOTZ

Pursuant to 28 U.S.C. § 1746, I, Timothy J. Kootz, declare and state as follows:

1. I am the Deputy Assistant Secretary ("DAS") for Shared Knowledge Services ("A/SKS")[1] within the Bureau of Administration of the United States Department of State (the "Department" or "State"), a position in which I have served since September 9, 2024. I was the Director of the Office of Information Programs and Services ("IPS")[2] within Global Information Services ("GIS"), a position in which I served from March 26, 2023, to September 8, 2024. I am the Department official responsible for overseeing the response to requests for records under the Freedom of Information Act ("FOIA"), 5. U.S.C. § 552; the Privacy Act of 1974, 5 U.S.C. § 552a; and other applicable records access provisions. I also served as the Agency Records

---

[1] The Office of Shared Knowledge Services is formerly the Office of Global Information Services ("A/GIS").
[2] The Office of Information Programs and Services ("IPS") was renamed the Information Access Programs Directorate ("IAP") in October 2024.

1

Officer and Chief of the Records and Archives Management Division of IPS from October 2016 to March 2023.

2.  I am familiar with the efforts of Department personnel to process the FOIA request that is the subject of this litigation, and I am in charge of coordinating the agency's processing efforts with respect to that request. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.

3.  The core responsibilities of the Information Access Programs Directorate ("IAP") include: (1) responding to records access requests made by the public (including under the FOIA, the Privacy Act, and the mandatory declassification review requirements of the Executive Order governing classified national security information), by Members of Congress, by other government agencies, and those made pursuant to judicial process such as subpoenas, court orders, and discovery requests; (2) national security classification management and declassification review; (3) research; and (4) technology applications that support these activities.

4.  I have previously submitted a declaration in this matter dated October 28, 2024, Declaration of Timothy J. Kootz (ECF No. 50-3). This declaration supplements my previous submission with additional information supporting the Department's withholdings under FOIA Exemptions 1, 5, and 7(A). An expanded *Vaughn* Index attached hereto as Exhibit A provides additional information about the material withheld and justifications for those withholdings.

### FOIA EXEMPTION 1 – CLASSIFIED INFORMATION

5.    As I have previously stated, the Department withheld eight documents under FOIA Exemption 1, in accordance with the requirements of E.O. 13526. All the information withheld pursuant to Exemption 1 in the eight documents relates to both foreign government information and the foreign relations of the United States and is appropriately classified both under sections 1.4(b) and 1.4(d) of E.O. 13526.

6.    The information withheld under Exemption 1 in Documents B-00001942773, B-00001942775, B-00001942777, B-00001942780, and B-00002428523 consists of readouts of a January 6, 2020, meeting between United States ("U.S.") Government and Government of Jordan officials. Documents B-00002428550 and B-00002428554 are email chains in which Department of State officials also discuss the substance of meetings between U.S. and Jordanian officials related to efforts to obtain custody of Ahlam Aref Ahmand Al-Tamimi ("Tamimi"). Document B-00001942770 is an email which likewise contains information related to confidential meetings between U.S. and Jordanian Government officials, in which the two Governments discussed confidential aspects of the Tamimi case, and in which U.S. officials described their plans for further actions. The diplomatic exchanges underlying the classified material in these eight documents, in which officials discussed the pending request for Tamimi's extradition to the United States, were premised and depended upon an expectation of confidentiality between the two Governments. The information in these documents meets the criteria of sections 1.4(b) and 1.4(d) of E.O 13526 as the withheld information is "Foreign Government Information," within the definition of section 1.4(b) of E.O.13526, because it is information exchanged with a foreign government undertaken with an expectation of confidentiality. The information also pertains to the foreign relations of the United States

pursuant to section 1.4(d) of E.O. 13526 because it relates to our bilateral relationship with the Government of Jordan as well as our practice of confidential diplomatic exchanges with foreign countries, including in the context of sensitive pending extradition requests and other law enforcement-related cooperation, which could undermine that cooperation if publicly revealed. The inability of the United States to maintain the confidentiality of its diplomatic exchanges, including the one here with the Government of Jordan, would inevitably chill relations with other governments and could reasonably be expected to cause serious damage to U.S. national security by diminishing our access to vital sources of information.

### FOIA EXEMPTION 5 – PRIVILEGED INFORMATION

7. As I have previously described, and as is outlined in the Department's *Vaughn* Index, the Department withheld information in 23 records pursuant to FOIA Exemption 5. This information was withheld pursuant to the Deliberative Process Privilege ("DPP"), Attorney Client Privilege ("ACP"), and Attorney Work Product ("AWP"). In the cases where multiple privileges are asserted in a document on the *Vaughn* Index, both privileges apply concurrently to all sections of the document marked with the Exemption 5 withholding.

### FOIA EXEMPTION 7(A) – LAW ENFORCEMENT INFORMATION

8. As I previously reported in my prior Declaration, and as is denoted in the Department's *Vaughn* Index, the Department withheld portions or the entirety of 12 documents under FOIA Exemption 7(A), which protects law enforcement records. These records all pertain to the ongoing efforts by the U.S. Government to obtain custody of Tamimi. These documents all reveal facts or information which, if released, would be reasonably likely to jeopardize the ongoing efforts to obtain custody of Tamimi and prosecute her within the United

States. They contain sensitive information related to the U.S. Government's interactions with the Government of Jordan, as well as inter-agency documents in which officials discuss the ongoing efforts to obtain custody of Tamimi.

9. In preparing documents for productions to Plaintiffs, and in preparing the *Vaughn* Indices and Declarations, the Department has been in regular contact with U.S. law enforcement agencies, including the Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI"). I am aware of the views of DOJ and FBI as a result of my official duties as the Department official responsible for overseeing the response to requests for records under the FOIA. Officials representing the DOJ's Executive Office for United States Attorneys ("EOUSA") and the FBI have reviewed and concurred with the redactions made pursuant to FOIA Exemption 7(A), including in Document no. A-00000564189. Individuals from U.S. law enforcement agencies have, furthermore, confirmed to the Department that the law enforcement investigations into the crimes Tamimi allegedly committed are ongoing. Through consultations with officials at the FBI, I have been made aware that the FBI investigative file on the Tamimi case remains open.

10. As I previously stated, the premature disclosure of the law enforcement information which the Department withheld under FOIA Exemption 7(A) would be reasonably likely to harm the ongoing investigation and interfere with efforts to obtain custody of Tamimi. The withheld information relates to sensitive diplomatic exchanges between the United States and the Government of Jordan, as well as discussions among U.S. Government officials related to strategies to obtain custody of Tamimi. The public disclosure of that information could harm and seriously impair the continuing ability of the U.S. Government, and the Department of State

in particular, to engage cooperatively with the Government of Jordan to obtain custody of Tamimi.

11.  Document No. A-00000564189 contains a "timeline of U.S. engagement with the GoJ on Tamimi" that the then-Deputy Chief of Mission of the U.S. Embassy in Amman sent to a Jordanian Government Official. Contrary to Plaintiff's assertions, as set out in their Cross Motion for Summary Judgment, the information withheld pursuant to FOIA Exemption 7(A) does not relate solely to efforts to extradite Tamimi pursuant to the U.S.-Jordanian Extradition Treaty. Rather, the withheld information also pertains to other law enforcement engagements between the DOJ and the Government of Jordan. The efforts to which this redacted information pertains remain ongoing. The premature release of this information, before such efforts are concluded, would be likely to risk the continued success of those efforts. It could also undermine future cooperation with this foreign government and other foreign governments on sensitive law enforcement matters, if these exchanges were publicly revealed, as it could undermine the foreign government's confidence in these sensitive and confidential law enforcement cooperation channels.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 24 day of January 2025, Washington, D.C.

Timothy J. Kootz