UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FRIMET ROTH, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>DEPARTMENT OF STATE,<br><br>       Defendant. | Civil Action No. 20-3838 (ABJ) |

**COMBINED REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO
<u>PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Argument .............................................................................................................................. 2

     I.     The Department Properly Withheld Records and Information Pursuant to FOIA
     Exemption 1. .................................................................................................... 2

          A.    Documents 6 and 7 .................................................................................. 5

     II.    The Department Properly Withheld Records and Information Pursuant to FOIA
     Exemption 5. .................................................................................................... 7

          A.    Document 28 ............................................................................................ 9

          B.    Document 21 .......................................................................................... 11

          C.    Document 29 .......................................................................................... 12

     III.   The Defendant Properly Withheld Records and Information Pursuant to FOIA
     Exemption 7. .................................................................................................. 13

          A.    Document 20 .......................................................................................... 14

     IV.   Plaintiffs' Remaining Arguments Lack Merit. .................................................. 18

Conclusion ......................................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*ACLU v. Fed. Bureau of Prisons*,
   Civ. A. No. 20-2320 (RBW), 2022 WL 1262112 (D.D.C. Apr. 28, 2022) ............................ 16

*Am. C.L. Union v. Dep't of Def.*,
   628 F.3d 612 (D.C. Cir. 2011) .................................................................................. 3, 7

*Am. C.L. Union v. Dep't of State*,
   878 F. Supp. 2d 215 (D.D.C. 2012) ........................................................................ 2, 4, 5

*Arthur Andersen & Co. v. IRS*,
   679 F.2d 254 (D.C. Cir. 1982) ..................................................................................... 9

*Barnard v. Dep't of Homeland Sec.*,
   598 F. Supp. 2d 1 (D.D.C. 2009) ................................................................... 16, 18, 19

*Bartko v. Dep't of Just.*,
   898 F.3d 51 (D.C. Cir. 2018) ................................................................................ 14, 15

*Campbell v. U.S. Dep't of Just.*,
   164 F.3d 20 (D.C. Cir. 1998) ..................................................................................... 14

*Comm. for Freedom of the Press v. Fed. Bureau of Investigation*,
   3 F.4th 350 (D.C. Cir. 2021) .......................................................................... 9, 10, 12

*Darui v. Dep't of State*,
   798 F. Supp. 2d 32 (D.D.C. 2011) ............................................................................ 2, 5

*DiBacco v. Dep't of Army*,
   926 F.3d 827 (D.C. Cir. 2019) ................................................................................... 17

*Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*,
   692 F.2d 770 (D.C. Cir. 1981) ..................................................................................... 1

*Hiken v. DOD*,
   2012 WL 13118568 (N.D. Cal. Feb. 3, 2012) ............................................................... 4

*Inst. for Pol'y Stud. v. CIA*,
   885 F. Supp. 2d 120 (D.D.C. 2012) ........................................................................... 16

*Jud. Watch, Inc. v. Dep't of*,
   *Def.*, 715 F.3d 937 (D.C. Cir. 2013) ............................................................................. 6

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C.Cir.2009) ....................................................................................... 4

*Machado Amadis v. U.S. Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2020) ................................................................................... 10

*Majuc v. Dep't of Just.*,
   Civ. A. No. 18-0566 (APM), 2022 WL 266700 (D.D.C. Jan. 28, 2022) ........................ 16, 17

*Mobley v. C.I.A.*,
   924 F. Supp. 2d 24 (D.D.C. 2013) ............................................................................... 3

*Morley v. Cent. Intelligence Agency*,
   508 F.3d 1108 (D.C. Cir. 2007) ............................................................................... 6, 7

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
   976 F.2d 1429 (D.C. Cir. 1992) ................................................................................. 10

*Renegotiation Bd. v. Grumman Aircraft*,
   421 U.S. 168 (1975) ........................................................................................ 10, 11
*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ............................................................... passim
*Schrecker v. Dep't of Just.*,
   217 F. Supp. 2d 29 (D.D.C. 2002) ...................................................................... 16
*Swan v. SEC*,
   96 F.3d 498 (D.C. Cir. 1996) .............................................................................. 14
*Tax Analysts v. IRS*,
   294 F.3d 71 (D.C. Cir. 2002) .............................................................................. 14
*Wolf v. Cent. Intelligence Agency*,
   473 F.3d 370 (D.C.Cir.2007) ................................................................................ 4

**Statutes**

5 U.S.C. § 552 ........................................................................................................ 1, 9

Defendant the Department of State (the "Department"), by and through undersigned counsel, respectfully replies in further support of its Motion for Summary Judgment ("Def.'s Mot.," ECF No. 50). and in opposition to Plaintiffs' Cross-Motion for Summary Judgment ("Pls.' Opp'n," ECF No. 53-1) in this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

As the Department demonstrated in its opening memorandum, the Department properly withheld the disputed information pursuant to the standards and categories for proper classification found in Executive Order 13,526, sections 1.4(b) and (d), and recognized by FOIA Exemption 1, the deliberative process privilege, attorney client privilege, and attorney work product privilege recognized by FOIA Exemption 5, and the protections found in FOIA Exemption 7(a) for law enforcement information. Because there is no genuine dispute of material act, the Department is entitled to judgment as a matter of law. In support of these withholdings, the Department relied on a *Vaughn* index and the Declaration of Department official Timothy Kootz. There is no serious dispute that the declaration is "relatively detailed and non-conclusory, and . . . submitted in good faith," *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981), and thus entitled to a presumption of good faith that Plaintiffs fail to overcome. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

In opposition, Plaintiffs raise several arguments that the Department failed to carry its burden in demonstrating that it properly withheld all exempt information. Ultimately, however, each of these assertions fails for the reasons set forth below.

**ARGUMENT**

**I.    The Department Properly Withheld Records and Information Pursuant to FOIA
UnderlineExemption 1.**

In its opening memorandum, the Department established that the challenged material

withheld under FOIA Exemption 1 was properly withheld pursuant to the parameters laid out in

Executive Order 13,526, sections 1.4(b) and (d).  The Department, through the Kootz Declaration,

has attested that material that was classified at the "CONFIDENTIAL" or "SECRET" level was

deserving of its classification status and met the standards articulated in Executive Order 13,526

for classification.  The withheld information contained foreign government information and

foreign relations or foreign activities of the United States, including confidential sources, which is

properly withheld under 1.4(b) and 1.4(d).

Plaintiffs oppose these Exemption 1 withholdings on several grounds.  First, Plaintiffs

argue that the Department's Exemption 1 withholdings are deficient as a matter of law because the

Department has asserted that the withheld information is appropriately classified pursuant to both

sections 1.4(b) and (d) of Executive Order 13,526, even though those bases for classification are

not co-extensive.  Pls.' Opp'n (ECF No. 53-1) at 8.  As Mr. Kootz made clear in the Department's

Second Declaration, all information was properly cited as classified pursuant to both sections

1.4(b) and (d) of Executive Order 13526. *See* Ex. A, 2d Kootz Decl. ¶ 5. This is unsurprising,

given the close relationship between those sections of Executive Order 13,526. Indeed, courts

within this District consistently find that the same material may be withheld under both sections

1.4(b) ("foreign government information") and (d) ("foreign relations or foreign activities of the

United States, including confidential sources"). *See, e.g.*, *ACLU v. Dep't of State*, 878 F. Supp.

2d 215, 222-23 (D.D.C. 2012) (determining that the Department appropriately withheld

information under both sections 1.4(b) and (d) in 23 records); *Darui v. Dep't of State*, 798 F. Supp.

2d 32, 41 (D.D.C. 2011) (determining that the Department appropriately withheld a record under both sections 1.4(b) and (d)).

More importantly, Plaintiffs appear to misapprehend the Department's burden. Courts have held, in instances where agencies have withheld information in reliance on more than one grounds for classification, that the classification may be upheld based on either justification found in Executive Order 13526. *Mobley v. CIA*, 924 F. Supp. 2d 24, 60 (D.D.C. 2013) ("The Court need not decide this question to grant summary judgment to State, however, because the information at issue is classified under both sections 1.4(g) and 1.4(d) of Executive Order 13,526. Thus, even if the information were not properly classified under section 1.4(g) as the plaintiffs contend, the plaintiffs do not dispute that the same information is properly classified under section 1.4(d)." (cleaned up)). And because courts "lack the expertise to second-guess . . . agency opinions in the typical national security FOIA case," they "must accord substantial weight to an agency's affidavit concerning the details of the classified status of [a] disputed record.'" *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (internal quotation marks omitted).

Here, the Department's declarant, Timothy Kootz, explains in detail why all the withheld information is appropriately classified under both section 1.4(b) and 1.4(d). Def.'s Mem. (ECF No. 50-1) at 8-9; *see also* Ex. A, 2d Kootz Decl. ¶¶ 5-6. The Department withheld information that constitutes "foreign government information" because "[t]he material withheld relates to confidential discussions about Tamimi between the United States and the Government of Jordan and related information regarding the pending request for her extradition to the United States." *See* Kootz Decl. (ECF No. 50-3) ¶ 18; *Vaughn* index (ECF No. 50-4) at 2-3. The Department likewise withheld the material as "foreign government information and the foreign relations of the United States" because "[d]iplomatic exchanges are premised upon, and depend upon, an

expectation of confidentiality" when, as here, "[m]utual trust between governments is vital to U.S. foreign relations."  Kootz Decl. (ECF No. 50-3) ¶ 22.

Mr. Kootz further articulated the damage to the national security that could be expected to result if the classified material were disclosed.  "Release of the foreign government information . . . would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges," which in turn "would impact the Department's ability to convince governments to share similar information with the United States in the future."  *Id.* ¶ 17.  Similarly, disclosure of the withheld foreign relations or foreign activities of the United States material here "would inevitably chill relations with other governments and could reasonably be expected to cause serious damage to U.S. national security by diminishing our access to vital sources of information," because foreign governments "could reasonably be expected to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest."  *Id.* ¶ 22.  These explanations are "both plausible and logical" as to how "the official disclosure of the information at issue in this case 'reasonably could be expected to result in damage to the national security.'"  *ACLU*, 878 F. Supp. 2d at 222 (quoting Exec. Order 13,526 § 1.1(a)(4), and citing *Larson v. Dep't of State*, 565 F.3d 857 (D.C. Cir. 2009), and *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).

Plaintiffs primarily rely on an out-of-circuit case to support their argument that the Department has not sufficiently demonstrated that its invocation of Exemption 1 is appropriate. *See* Pls.' Opp'n (ECF No. 53-1) at 8 (citing *Hiken v. Dep't of Def.*, Civ. A. No. 06-2812, 2012 WL 13118568, at *14 (N.D. Cal. Feb. 3, 2012)).  *Hiken*, however, is not persuasive because it is readily distinguishable.  Applying non-controlling precedent, the *Hiken* court determined that the

government failed "to provide anything other than conclusory reasons why disclosure could harm national security including this country's foreign relations." *Id.* at *14. Here, by contrast, the Department has offered a plausible and logical explanation of how disclosure could be expected to harm national security—reasons that courts within this District have accepted as sufficient to prevail at summary judgment. *ACLU*, 878 F. Supp. 2d at 222-23 (granting summary judgment where the State Department witness averred that the material withheld under sections 1.4(b) and (d) "has the potential to, among other things, degrade the confidence in the United States' ability to maintain the confidentiality of information; inhibit the United States' ability to access sources of information essential to the conduct of foreign affairs; and damage the United States' relationship with foreign governments, agencies, and officials" if disclosed); *see also Darui*, 798 F. Supp. 2d at 40-41. *Hiken* thus does not persuade that this Court should deny the Department's motion.

### A.    Documents 6 and 7

Plaintiffs also argue that the Department's explanation as to Documents 6 and 7 (B-2428519 and B-2428530) are deficient in several respects. Pls.' Opp'n (ECF No. 53-1) at 19-20. They contend that neither document "contains communications between the State Department and the Jordanian government." *Id.* at 19. They also object that the Department "merely asserts that the withheld material 'relates' to confidential discussions with the Jordanian government regarding Tamimi and her pending extradition." *Id.* They also complain that the document does not reveal a date, a "more thorough" explanation about how the Department obtained the document, or a rationale why it is important to national security to maintain their continued confidentiality—and muse that "there have been significant public updates in the United States' dealings with Jordan with respect to Tamimi." *Id.* at 19-20. Each of these arguments fails to undermine the Department's invocation.

Plaintiffs' speculative claims that the documents do not contain communications with the Jordanian government, or that "much of the redacted information is likely already public," *see id.* at 19-20, is unsupported in the record and is insufficient to overcome the Department's declaration and its averments to the contrary. *SafeCard Servs.*, 926 F.2d at 1201. In fact, both documents contain a header revealing that the withheld material pertains to background for a call between Department personnel and Jordanian ambassadors. As the Department's *Vaughn* index indicates, this background includes confidential discussions about Tamimi between the United States and the Government of Jordan and related information regarding the pending request for her extradition to the United States. *Vaughn* index (ECF No. 50-4) at 3. Accordingly, Plaintiffs unfounded speculations do not refute the assertions in the Department's supporting papers.

Plaintiffs' argument that the Department offers only a "vague description" is equally unavailing. As the D.C. Circuit has recognized, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007). This includes classified information that "pertains to . . . foreign government information" and "foreign relations or foreign activities of the United States, including confidential sources," Exec. Order 13,526 §§ 1.4(b), (d), because "pertains is not a very demanding verb." *Jud. Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013). For the reasons explained above, and in the Department's opening memorandum, the Department has explained why the withheld information has been and remains appropriately classified, and Plaintiffs' argument to the contrary "does not overcome the substantial weight the court must accord to [the Department's] affidavit concerning the details of the classified status of the disputed record." *Morley*, 508 F.3d at 1124.

Finally, Plaintiffs' remaining arguments that summary judgment should be denied because the Department has not offered a date for the challenged documents or an explanation of the importance of maintaining the classified nature of the information lacks support in the law or the record. Plaintiffs offer no case law supporting the proposition that the Department must identify the date on a record to sustain its invocation of Exemption 1, Pls.' Opp'n (ECF No. 53-1) at 19, and in any event such an argument sits in tension with the D.C. Circuit's instruction that the Department need only offer a "plausible assertion that information is properly classified" to prevail. *Morley*, 508 F.3d at 1124. Regarding the continued classification, moreover, the Department's declarant—an original classification authority—averred that the withheld information "requires classification" because "its unauthorized disclosure reasonably could be expected to cause serious damage or damage to the national security." Kootz Decl. (ECF No. 50-3) ¶ 13. He also expressly averred that the information classified pursuant to both sections 1.4(b) and (d) "is currently and properly classified" and "therefore, exempt from release under FOIA Exemption 1." *Id.* ¶¶ 19, 24. These averments are entitled to a presumptive validity, *SafeCard Servs.*, 926 F.2d at 1201, and Plaintiffs have failed to undermine these assertions.

The Department's burden to sustain a withholding pursuant to Exemption 1 "is a light one." *ACLU*, 628 F.3d at 624. As explained herein and in its opening memorandum, the Department has met this burden. Accordingly, this Court should grant it summary judgment on its invocation of Exemption 1.

## II. The Department Properly Withheld Records and Information Pursuant to FOIA Exemption 5.

In its opening memorandum, the Department also established that parts of the challenged materials were properly withheld pursuant to the deliberative process privilege, attorney client privilege, and attorney work product privilege recognized by FOIA Exemption 5 because the

Department appropriately withheld (1) predecisional, deliberative materials about communications with Jordan on Tamimi's extradition that, if disclosed, would chill intra and inter-agency dialogue by releasing sensitive internal communications about a controversial topic and would cause confusion about the foreign policy stances of the United States; (2) advice given by government attorneys to their internal department clients regarding the U.S.-Jordan extradition treaty and the criminal investigation into Tamimi; and (3) documents prepared in advance of foreseeable litigation related to the Tamimi extradition and/or the criminal case against her.

Plaintiffs first object to the Department's Exemption 5 withholdings by contending that it is "impossible to scrutinize the validity of any particular Exemption 5 redaction" because the specific privilege invoked by the Department is listed in the *Vaughn* index but not on the redactions themselves. Pls.' Opp'n (ECF No. 53-1) at 9. Plaintiffs further argue that "[t]he fact that two different Exemption 5 doctrines may apply to different pieces of information within the same document does not mean that both doctrines apply to the entire document." *Id.* at 10.

For the same reasons as above, however, Plaintiffs' argument lacks merit. As the Department's *Vaughn* indices make clear, it has asserted that the withholdings in the documents are justified under one or more privilege as appropriate. *See*, *e.g.*, *Vaughn* index (ECF No. 50-4) at 9 (invoking both the deliberative process and attorney work product privileges). Information may justifiably be withheld under Exemption 5 under multiple privileges. *See, e.g., SafeCard Servs.*, 926 F.2d at 1200 (noting that the agency had asserted both deliberative process privilege and attorney work product over the same document). The Department has done so here, as well. *Compare Vaughn* index (ECF No. 50-4) at 9 (invoking both deliberative process privilege and attorney work product over the withheld information in Documents 21-24), *with id.* at 12 (invoking only deliberative process privilege over the withheld information in Documents 27).

A.      **Document 28**

As to specific documents, Plaintiffs first object that the Department improperly withheld

material in Document 28 pursuant to Exemption 5.  Pls.' Opp'n (ECF No. 53-1) at 15-17.  They

first contend that the Department has improperly withheld a document that "was clearly meant to

be 'used by the agency in its dealings with the public'" because a segregated, non-exempt portion

of the documents lists mock questions that the Department anticipated receiving from the press

regarding Tamimi's criminal charges.  *Id.* at 16 (quoting *Arthur Andersen & Co. v. IRS*, 679 F.2d

254, 257-58 (D.C. Cir. 1982)).  As an initial matter, Plaintiffs assume that the withheld information

must not be deliberative because of the existence of non-exempt materials within the document

that appear final and ready for the public.   This speculation is unfounded, as the released

information merely reflects that the Department has fulfilled its obligation to segregate and release

non-exempt information—an issue that Plaintiffs do not challenge in their cross-motion.  *See*

*generally* Pls.' Opp'n (ECF No. 53-1); *see also* 5 U.S.C. § 552(b) (requiring "any reasonably

segregable portion of a record shall be provided to [the requester] after deletion of the portions

which are exempt").  Here, the Department has explained that it "conducted a line-by-line review"

of Document 28, and withheld only exempt information—in particular, Department officials'

deliberations over relevant facts to consider prior to a final decision about the specific responses

that would be shared by the State Department with the press.  *Vaughn* index (ECF No. 50-4) at 13.

More  fundamentally,  however,  this  misapprehends  the  nature  of  the  Department's

withholding.  It is beside the point, for purposes of the deliberative process analysis, what the

Department intended the recipient of the final product to be; what matters is that the withheld

information "must have been created during an agency's deliberations about a policy, as opposed

to documents that embody or explain a policy that the agency adopts" and "contain the type of

back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to

promote and to preserve the undercover policy that sits at the heart of the deliberative process privilege." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362, 364 (D.C. Cir. 2021). Here, the Department has shown that Document 28 is pre-decisional because "the content predates any final determination about the specific responses that would be shared by the State Department with the press," and is deliberative because "they reflect State Department officials' views and opinions concerning relevant facts to be considered in preparing for responding to press inquiries about the criminal charges brought against Tamimi." *Vaughn* index (ECF No. 50-4) at 13; *see also* Kootz Decl. (ECF No. 50-3) ¶ 26.

Plaintiffs also argue that the Department cannot demonstrate that the withheld information in Document 28 is pre-decisional because the Department has not identified any final version of this press guidance. The Department is not required to identify a final version of a policy to sustain its invocation of the deliberative process, however. A draft is still a draft for purposes of determining whether deliberative process privilege applies to a document, even where there is no final government agency document. *Reps. Comm.*, 3 F.4th at 367 ("The deliberative process privilege could similarly apply to proposed materials that die on the vine like draft speeches for policymakers that are never given, or draft regulations that never see the light of day."). All that matters is that the Department explains why the withheld information is both pre-decisional and deliberative. *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). Here, the Department has demonstrated that Document 28 contains pre-decisional information because the information was "'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). It likewise explained why the information was deliberative: the withheld information

"reflect[s] State Department officials' views and opinions concerning relevant facts to be considered in preparing for responding to press inquiries about the criminal charges brought against Tamimi." *Vaughn* index (ECF No. 50-4) at 13.

Finally, Plaintiffs argue that Document 28 is not pre-decisional or deliberative because it "postdates the [Department of Justice] press release" and "presumably reflects the [State] Department's final public position on those charges, not any pre-decisional deliberations." Pls.' Opp'n (ECF No. 53-1) at 17. A press release by another agency, however, does not prejudge what the Department would choose to include in its own public messages. And, as explained above, Plaintiffs' speculation cannot overcome the Department's averments that Document 28—like other documents for which the Department invoked the deliberative process privilege—"reflect[] the internal exchange of ideas and recommendations when Department officials are formulating a strategy for official action." Kootz Decl. (ECF No. 50-3) ¶ 26; *Vaughn* index (ECF No. 50-4) at 13.

## B.    Document 21

As to Document 21, Plaintiffs argue that an apparent inconsistent application of its withholding undermines the Department's invocation of Exemption 5 more generally. Pls.' Opp'n (ECF No. 53-1) at 18. Plaintiffs contend that "a portion of the May 28, 2019, 4:28 PM email that appears in Document 21" is redacted in that document, but not redacted in Plaintiffs' Exhibit 33. *See id.* ("*Compare* LaBerge Decl. Ex. 21 at 4 [(ECF No. 53-3 at 89-91)], *with* LaBerge Decl. Ex. 33 at 49-50 [ECF No. 53-3 at 156]"). According to Plaintiffs, the Department released information in LaBerge Exhibit 33 that had been redacted in Document 21. *See id.*

This argument appears defective in several material respects. As an initial matter, Plaintiffs appear to miscite the portion of the record they contend supports their argument. LaBerge Exhibit 33 is a single page email from August 4, 2020. *See* LaBerge Decl. Ex. 33 (ECF No. 53-3

at 156).   Document 21, meanwhile, is an email chain that, as relevant here, includes communications dated May 28, 2019 (ECF No. 53-3 at 89-91).  The Department believes that Plaintiffs intended to refer to LaBerge Exhibit 34 (ECF No. 53-3 at 158-63).  Even identifying what the Department believes to be the correct citation to the record, however, Plaintiffs' argument suffers from a second defect—its premise is incorrect.  Although Plaintiffs claim that "the entry for 'Nader Saadeh' is unredacted in the August 15, 2022, version (LaBerge Exhibit 34), but it is redacted in Document 21," Pls.' Opp'n (ECF No. 53-1) at 18, that argument is belied by a cursory review of both records.  The relevant unredacted sections of both Document 21 and LaBerge Exhibit 34 contain identical language—albeit formatted slightly differently in each version.  *See* Ex. B, Comparison of Doc. 21 with LaBerge Ex. 34.  Accordingly, this apparent discrepancy is not a discrepancy at all—and falls far short of "call[ing] into question the remainder of the State Department's (b)(5) redactions in Document 21."  Pls.' Opp'n (ECF No. 53-1) at 18.

### C.    Document 29

Lastly, Plaintiffs argue that the Department has invoked Exemption 5 inappropriately in Document 29 for similar reasons to those it articulated for Document 28—namely, that the Department has labelled this document a "draft" without identifying a final version that went out, and that the privilege extends only to internal deliberations and not to information conveyed to an external source like the Jordanian government.  *Id.* at 20.  These arguments fail for the same reason as discussed above.  In brief, the Department's invocation of the deliberative process privilege can apply to drafts that never materialize into a final version of a letter.  *See Reps. Comm.*, 3 F.4th at 367 ("The deliberative process privilege could similarly apply to proposed materials that die on the vine like draft speeches for policymakers that are never given, or draft regulations that never see the light of day.").

Moreover, as explained above, the assertion of the deliberative process privilege does not hinge on the fact that a final version of the pre-decisional, deliberative material might have a recipient external to the federal government, but rather that the federal government was deliberating over the contents of a draft prior to making a decision about its contents. Kootz Decl. (ECF No. 50-3) ¶¶ 26, 30; *Vaughn* index (ECF No. 50-4) at 14. Finally, this Court need not credit Plaintiffs' mischaracterization of the draft letter as the Department of Justice's "settled view." Pls.' Opp'n (ECF No. 53-1) at 21. As the Department explained, Document 29 is "draft correspondence from the Department of Justice to the Government of Jordan" and it "reflect[s] the distillation of the two agencies' views and are predecisional as they predated a final agency ruling[.]" Kootz Decl. (ECF No. 50-3) ¶ 30; *Vaughn* index (ECF No. 50-4) at 14. Plaintiffs' unsupported speculation about a supposed "internal[] inconsisten[cy]" does not overcome the Department's well-supported explanations for why the draft letter was withheld in full.

## III.    The Defendant Properly Withheld Records and Information Pursuant to FOIA Exemption 7.

In its opening memorandum, the Department has further established that parts of the disputed material were properly withheld pursuant to FOIA Exemption 7(A). This subset of materials relates to the Department of Justice—a law enforcement agency of the U.S. Government—and its ongoing criminal investigation into Tamimi. These records were properly withheld under Exemption 7(A) because they relate to an ongoing criminal investigation matter, and disclosure of these sensitive materials could impact the course of the investigation. In particular, disclosure of materials related to the ongoing criminal investigation of Tamimi could impact the ability of the State Department to continue to engage cooperatively with Jordan regarding Tamimi's extradition.

In opposition, Plaintiffs reiterate their argument that the Department's invocation of Exemption 7(A) is defective because it has used the "same exact rationale" to justify the withholding of information in each document. Pls.' Opp'n (ECF No. 53-1) at 10-11. As explained by the Department's declarant, however, every single record withheld pursuant to Exemption 7(A) was compiled in furtherance of the Department of Justice's criminal investigation into Tamimi and efforts to extradite her; that the criminal investigation and extradition efforts remain pending and ongoing; and the premature release of the withheld information could reasonably be expected to interfere with the government's ongoing criminal investigations efforts to extradite Tamimi to the United States, and the United States' ability to continue to work cooperatively with the Jordanian government to extradite Tamimi. Kootz Decl. (ECF No. 50-3) ¶¶ 35-36; *see also Vaughn* index (ECF No. 50-4). This satisfies the D.C. Circuit's standard for invoking Exemption 7(A). *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (noting that the Exemption 7 threshold may be satisfied even where the records in question do not relate to a particular investigation); *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996) (holding that documents are exempt under Exemption 7(A) where disclosure "could reveal much about the focus and scope of the [agency's] investigation").

### A.    Document 20

Turning to specific document objections, Plaintiffs first contend that the portion of Document 20 that the Department withheld pursuant to Exemption 7(A)—a section underneath unredacted text that explains "a timeline of U.S. engagement with the [Government of Jordan] on Tamimi"—is not supported because the State Department does not specialize in law enforcement and thus its invocation of Exemption 7(A) should be accorded no deference by this Court. Pls.' Opp'n (ECF No. 53-1) at 12 (citing *Bartko v. Dep't of Just.*, 898 F.3d 51 (D.C. Cir. 2018)). Although Plaintiffs correctly state the law as to the necessary threshold holding for invoking

Exemption 7, the argument is of no moment because the Department has plainly met the standard here.[1]  The Department has shown that Document 20 was actually compiled for law-enforcement purposes.  *Bartko*, 898 F.3d at 65.  Here, the withheld information in Document 20 was compiled to document the Department of Justice's ongoing criminal investigation into Tamimi's alleged offenses.  Kootz Decl. (ECF No. 50-3) ¶ 35; *see also* Ex. A, 2d Kootz Decl. ¶ 9.

In a related vein, Plaintiffs highlight certain public action by the Department of Justice regarding Tamimi to infer that there must be no ongoing criminal investigation into her criminal activity.  Pls.' Opp'n (ECF No. 53-1) at 12-13.  However, Plaintiffs do not identify any evidence that the law enforcement investigation into Tamimi has concluded—and instead repeatedly rely on speculation.  *See id.* at 13 ("Moreover, the unsealing of the complaint suggests that [the Department of Justice's] investigation had been essentially completed, perhaps years earlier."); *id.* ("when announcing publicly in 2017 the unsealing of the complaint, [the Department of Justice] suggested that its investigation was indeed complete"); *see also id.* at 14 (suggesting that the law enforcement proceeding cannot be ongoing because "Jordan's highest court already ruled that the 1995 bilateral extradition treaty between the United States and Jordan is unenforceable" and thus law enforcement proceedings "terminated on March 21, 2017 when Jordan's Court of Cassation issued its decision"); *id.* at 14 (suggesting that there is no risk of disclosure of any ongoing investigatory activities that, in any case, were complete before (perhaps long before) the document was prepared"); *id.* at 15 (suggesting that the law enforcement proceedings against Tamimi cannot

---

[1]    As the Department's declarant has averred, the Department has been in regular contact with U.S. law enforcement agencies, including the Department of Justice and Federal Bureau of Investigation.  Ex. A, 2d Kootz Decl. ¶ 9.  Both have confirmed to the Department that "law enforcement investigations into the alleged crimes Tamimi committed are ongoing."  *See id.* Plainly, the FBI is a law enforcement agency whose views on Exemption 7 are entitled to deference.  *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998).

be ongoing because "there is no question that Tamimi committed this crime" given a conviction in a foreign court and her statements to media). As before, Plaintiffs' speculation cannot overcome the presumption of good faith courts within this Circuit afford to agency declarations, which in this case was based on express representations from the relevant law enforcement agency that the investigation at issue remains open and ongoing. *SafeCard Servs.*, 926 F.2d at 1201; Ex. A, 2d Kootz Decl. ¶ 9 ("the FBI investigative file on the Tamimi case remains open").

Plaintiffs also attack the Department's reliance on evidence they contend is hearsay. *See* Pls.' Opp'n (ECF No. 53-1) at 13. According to Plaintiffs, Mr. Kootz's statement that "'the Department of Justice requested withholding of information related to the criminal complaint'" and that "[i]f releasing Document 20 or any other documents implicated an ongoing criminal investigation, Plaintiffs would have expected [the Department of Justice] to have supported the exemption directly by declaration." *Id.* (citing Kootz Decl. (ECF No. 50-3) ¶¶ 35-36). Plaintiffs' argument misses the mark, however, because the Department's averments are admissible and competent evidence supporting summary judgment.

Courts within this Circuit and this District routinely affirm that a declaration of an agency official who is knowledgeable about the agency's FOIA practices and familiar with the documents in question has been found to satisfy the personal knowledge requirement for summary judgment declarations, including regarding the views of other agencies consulted in the performance of that official's duties. *See, e.g., ACLU v. Fed. Bureau of Prisons*, Civ. A. No. 20-2320 (RBW), 2022 WL 1262112, at *5 (D.D.C. Apr. 28, 2022) ("the information a declarant provides in a FOIA matter need not be independently corroborated in order to survive a hearsay objection"); *Majuc v. Dep't of Just.*, Civ. A. No. 18-0566 (APM), 2022 WL 266700, at *3 (D.D.C. Jan. 28, 2022) ("Courts routinely have held that declarants in FOIA cases can rely on information obtained

through inter-agency consultations without running afoul of hearsay rules."); *Inst. for Pol'y Stud. v. CIA*, 885 F. Supp. 2d 120, 134 (D.D.C. 2012) ("[a] declarant is deemed to have personal knowledge if he has a general familiarity with the responsive records and procedures used to identify those records and thus is not required to independently verify the information contained in each responsive record"); *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) ("FOIA declarants may include statements in their affidavits based on information that they have obtained in the course of their official duties"); *Schrecker v. Dep't of Just.*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002) (rejecting argument that affidavit was hearsay because affiant was "responsible for the FBI's compliance with FOIA litigation and is therefore not merely speculating about the FBI activities"), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003).

Here, Mr. Kootz has averred that he made his statements based on "[his] personal knowledge, which in turn is based on information furnished to [him] in the course of his official duties." Kootz Decl. (ECF No. 50-3) ¶ 2. He has further averred that, as to the application of Exemption 7(A), he is personally aware of the views of the Department of Justice and the Federal Bureau of Investigation "as a result of my official duties as the Department official responsible for overseeing the response to requests for records under the FOIA." Ex. A, 2d Kootz Decl. ¶ 9. Relying on these sources of information, Mr. Kootz explained how the withheld information was compiled for law enforcement purposes, pertains to a pending law enforcement proceeding, and the disclosure of which could reasonably be expected to cause harm. Kootz Decl. (ECF No. 50-3) ¶¶ 34-36. Specifically, Mr. Kootz has confirmed that both the Department of Justice and the FBI confirmed that the withheld information in Document 20 "was actually compiled for law enforcement purposes"; "the law enforcement investigations into the alleged crimes Tamimi committed are ongoing"; "the FBI investigative filed on the Tamimi case remains open"; and the

public disclosure of that information could harm those ongoing investigations and efforts to bring Tamimi to justice in the United States.  Ex. A, 2d Kootz Decl. ¶¶ 9-10.  That suffices to establish that Exemption 7(A) applies to Document 20, and Plaintiffs' argument that the Department of Justice should have supplied a declaration instead is unavailing.  *See DiBacco v. Dep't of Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) (collecting cases; "although some of the information was relayed to [the agency declarant] by her subordinates, declarations in FOIA cases may include such information without running afoul of Rule 56"); *Majuc*, 2022 WL 266700, at *3 (reliance on information obtained through inter-agency consultation does not run afoul of evidentiary rules).

The undisputed evidentiary record reveals that the information withheld from Document 20 was actually compiled for law enforcement purposes that remain pending, and the release could reasonably be expected to interfere with that investigation.  Kootz Decl. (ECF No. 50-3) ¶¶ 34-36; Ex. A, 2d Kootz Decl. ¶¶ 8-11.  Accordingly, the Department is entitled to summary judgment on this withholding.

## IV.    **Plaintiffs' Remaining Arguments Lack Merit.**

Finally, Plaintiffs argue that the Department has failed to justify withholdings in five records that the Department had not included in its *Vaughn* index (ECF No. 50-4).  Pls.' Opp'n (ECF No. 53-1) at 6.  Plaintiffs also argue that the Department had not produced four documents listed on its original *Vaughn* index.  *See id.* at 21.

With respect to Plaintiffs' former argument, the Department has provided a supplemental *Vaughn* index that explains the bases for its withholdings in these five records under Exemptions 1, 5, and 7(A).[2]  *See* Ex. C, Supp. *Vaughn*.  Those respective withholdings are proper for the reasons

---

[2]    Plaintiffs contend that the identified documents have "(b)(5)" redactions on them.  That is not the case as to every document that Plaintiffs cite in this portion of their memorandum.  *See* LaBerge Decl. Exs. 30-34.  For example, LaBerge Exhibit 30 (document 00000330393) asserts limited information is appropriately withheld pursuant to Exemption 7(A).  *See* Ex. C, Supp.

explained in this and the Department's opening memorandum. Accordingly, the record supports granting the Department summary judgment on these withholdings.

With respect to Plaintiffs' argument that the Department had not produced four documents that it had listed on its original *Vaughn* index (Pls.' Opp'n (ECF No. 53-1) at 21), the present record adequately explains the Department's withholdings. Documents 17, 18, and 29 (A-329948, A-329950, and A-445760) were denied in full. *See Vaughn* index (ECF No. 50-4) at 7; *see also id.* at 5 (defining "DIF" as "denied in full"). Accordingly, there are no records to release to Plaintiffs because the Department asserts that the records are appropriately withheld in full. As to Document 27 (A-445759), the Department made a supplemental release to Plaintiffs on December 13, 2024, because it "identified one responsive record subject to the FOIA that was not previously produced" and "determined the one record may be released in part." Ex. D, Dec. 13, 2024, Supp. Release. Accordingly, this issue is now moot.

*    *    *

---

*Vaughn* at 5. LaBerge Exhibit 33 contains information withheld pursuant to Exemptions 1 and 5. *See id.* at 3. Finally, LaBerge Exhibit 32 has been re-released asserting certain material is protected under Exemption 7(A) as well. *See id.* at 1; *see also* Ex. D, Dec. 13, 2024, Supp. Release.

## CONCLUSION

For these reasons, and those in its opening memorandum, the Department respectfully requests that this Court grant it summary judgment.

Dated: January 24, 2025                    Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:           */s/ Stephen DeGenaro*
STEPHEN DEGENARO,
D.C. Bar #1047116
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7229
Stephen.DeGenaro@usdoj.gov

*Attorneys for the United States of America*