UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIMET ROTH and ARNOLD ROTH, Plaintiffs, v. U.S. DEPARTMENT OF STATE, Defendant. | Civil Action No. 20-3838 (ABJ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1
ARGUMENT ................................................................................................................................... 1
    I.    Defendant's shifting position justifies *in camera* review of every document. ..................... 1
    II.   The Department has failed to justify its withholdings with respect to Documents 6, 7, 20, 28, and 29. ........................................................................................................................ 7
CONCLUSION ................................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Immigration Council v. DHS*,
950 F. Supp. 2d 221 (D.D.C. 2013) ................................................................................................6

*Bartko v. DOJ*,
898 F.3d 51 (D.C. Cir. 2018) ..........................................................................................................7

*Bevis v. Dep't of State*,
801 F.2d 1386 (D.C. Cir. 1986) ......................................................................................................6

*CREW v. DOJ*,
746 F.3d 1082 (D.C. Cir. 2014) ......................................................................................................6

*Elec. Privacy Info. Ctr. v. CBP*,
160 F. Supp. 3d 354 (D.D.C. 2016) ............................................................................................5, 6

*Halpern v. FBI*,
181 F.3d 279 (2d Cir. 1999) ..............................................................................................3, 5, 6, 7

*Hiken v. DOD*,
2012 WL 13118568 (N.D. Cal. Feb. 3, 2012) .............................................................................4, 5

*Irons & Sears v. Dann*,
606 F.2d 1215 (D.C. Cir. 1979) ......................................................................................................9

*Judicial Watch v. USPS*,
297 F. Supp. 2d 252 (D.D.C. 2004) ................................................................................................4

*King v. U.S. Dep't of Just.*,
830 F.2d 210 (D.C. Cir. 1987) ..................................................................................................3, 10

*Lucaj v. FBI*,
852 F.3d 541 (6th Cir. 2017) ..........................................................................................................9

*Sciacca v. FBI*,
23 F. Supp. 3d 17 (D.D.C. 2014) ....................................................................................................5

*Trentadue v. Integrity Committee*,
501 F.3d 1215 (10th Cir. 2007) ......................................................................................................9

**STATUTES**

5 U.S.C. § 552(b)(1) ......................................................................................................3, 4, 9

5 U.S.C. § 552(b)(5) ......................................................................................................3, 8, 9

5 U.S.C. § 552(b)(7)(A) .....................................................................................................6, 7

E.O. 13526 § 1.4 ..............................................................................................................2, 3, 4

**INTRODUCTION**

Plaintiffs Frimet and Arnold Roth ("Plaintiffs"), by and through their undersigned counsel, respectfully submit this reply in further support of their Cross-Motion for Summary Judgment ("Pl. Mot.," ECF No. 53-1). In their cross-motion, Plaintiffs explained why the State Department's FOIA exemption invocations were legally deficient—both on a global level, and as applied to specific documents. The State Department's response confirms that Plaintiffs were correct: the Department has served a new declaration that contradicts its first declaration, as well as a new *Vaughn* index. This is just the latest installment of a familiar pattern in this case: the State Department has continuously given Plaintiffs reason to doubt its invocations of Freedom of Information Act ("FOIA") exemptions.

For the reasons discussed in our prior papers and below, the Court should grant Plaintiffs' Cross-Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment. At a minimum, Plaintiffs respectfully request the Court conduct an *in camera* review of the 34 documents identified in the *Vaughn* index.

**ARGUMENT**

**I.     Defendant's shifting position justifies *in camera* review of every document.**

Plaintiffs moved for summary judgment on the well-recognized basis that the State Department's *Vaughn* index, the labels it stamped on its redactions, and the First Kootz Declaration did not meaningfully communicate why specific FOIA exemptions apply to any of the withheld material. Pl. Mot. 6–11. In particular, while the State Department purported to invoke Exemptions 1, 5, and 7(A) to justify withholding dozens of documents, it (i) failed to address the several underlying classification criteria that can give rise to a valid Exemption 1 withholding, (ii) failed to address the several underlying privileges and doctrines that can give rise to a valid Exemption 5 withholding, and (iii) failed to provide sufficiently tailored category-by-category

explanations of documents being withheld under Exemption 7(A). *Id.* at 6. In its opposition to Plaintiffs' cross-motion, the State Department failed to meaningfully address—as to each exemption category—the structural deficiencies in its descriptions of the challenged documents and its explanations for decisions to withhold them. (*See* "State Opp. & Reply," ECF No. 57-1).

Now, in its opposition, the State Department submits a supplemental declaration and supplemental *Vaughn* index, a development that corroborates Plaintiffs' concerns about Defendant's original representations.[1] Not only does the State Department suggest that Plaintiffs should have relied on a declaration that had not yet been filed, it incorrectly treats the supplemental declaration as consistent with the original declaration. State Opp. & Reply 2. That is inaccurate; the supplemental declaration lists and describes eight documents that the State Department claims may be properly redacted pursuant to Exemption 1 and states that "*[a]ll* the information withheld pursuant to Exemption 1 in the eight documents relates to both foreign government information and the foreign relations of the United States and is appropriately classified both under section 1.4(b) and 1.4(d)." Second Kootz Decl. (ECF No. 57-2) ¶ 5. Mr. Kootz's prior declaration did not describe each of these documents and stated only that "*[s]ome* of the withheld information is classified under Section 1.4(d) of E.O. 13526." *See* First Kootz Decl. (EC7 No. 50-3) ¶ 20.

---

[1] The State Department's original *Vaughn* index failed to list five documents (Document 30 through 34) that the Department had produced in redacted form. *See Vaughn* Index (ECF No. 50-4); Pl. Mot. 6. Now, the Department claims it has resolved the issue by providing Plaintiffs with a supplemental *Vaughn* index listing those documents. The descriptions provided for documents 30 through 34 on the supplemental *Vaughn* index are the first pieces of information the Plaintiffs have ever received about these documents. *See* State Opp. & Reply 18–20. The Department also produced Document 27 on December 13, 2024 after having failed to produce it previously. State Opp. & Reply Ex. D. The Department did not supplement its deficient *Vaughn* index entry for that document, so the dispute as to that document is not "moot" as Defendant suggests. *Compare* Vaughn Index (entry for Document 27), *with* Supp. Vaughn Index (ECF No. 57-4) (entry for Document 27).

This sequence of events has hindered Plaintiffs' ability to "contest the [representations] in adversarial fashion" and complicates the Court's ability to engage in "effective" review of the State Department's redactions, leaving "no other option than to defer to the government's decision" to redact, which is an unacceptable result. *Halpern v. FBI*, 181 F.3d 279, 193 (2d Cir. 1999) ("[B]lind deference is precisely what Congress rejected when it amended FOIA in 1974.").

The Department alone knows the content of the withheld documents, and as such, Plaintiffs must rely upon the Department's representations to understand why this material must be protected. *See King v. U.S. Dep't of Just.*, 830 F.2d 210, 218 (D.C. Cir. 1987) ("As, ordinarily, the agency alone possesses knowledge of the precise content of documents withheld, the FOIA requester and the court both must rely upon its representations for an understanding of the material sought to be protected."). It is the Department's burden to justify its withholdings. *Id.* at 217.

To compensate for the Government's shifting positions, Plaintiffs request that the Court order *in camera* review of the 34 documents at issue in this case. Plaintiffs respectfully submit that this would not be overly burdensome for the Court. *Halpern*, 181 F.3d at 293 (remanding to district court for de novo review of twenty-one documents). *In camera* review is further justified by the State Department's failure to meaningfully address the structural legal deficiencies in its original submissions, as explained below.

***Exemptions 1 and 5.*** In the State Department's production, every single Exemption 1 redaction is labeled "(b)(1)," and every single Exemption 5 redaction is labeled "(b)(5)." *See, e.g.,* Pl. Mot. Exs. 14 (Exemption 1), 23 (Exemption 5). The State Department failed to clarify, from the outset of the litigation, its position that every single redaction labeled "(b)(1)" is justified by EO 13526 § 1.4(b) *and* § 1.4(d), and it now appears to fault Plaintiffs for not referencing a

3

supplemental declaration that did not yet exist. State Opp. & Reply 2 ("As Mr. Kootz made clear in the Department's Second Declaration, …").[2]

Contrary to the State Department's contention, the "close relationship" between §§ 1.4(b) and (d) does not obviate the State Department's burden of explaining that both provisions apply, or that either one of them applies—if indeed either of them do. *See Hiken v. DOD*, 2012 WL 13118568, at *14 (N.D. Cal. Feb. 3, 2012) (using "the same reasons" for sections 1.4(b) and (d) served to confuse, not inform, FOIA applicant where agency relied primarily on conclusory explanations, and thus summary judgment was proper in favor of FOIA applicant).

The State Department's reliance on cases in which agencies have successfully withheld documents under both sections 1.4(b) and (d) (State Opp. & Reply 2–3) is non-responsive to Plaintiffs' argument, which is that the State Department's representations are legally deficient. For example, in discussing Exemption 1, the First Kootz Declaration laid out the statutory text and the text of Executive Order 13526 §§ 1.4(b) and (d), discussed the general policy considerations underlying those provisions, and stopped there. *E.g.,* State First Kootz Decl. ¶¶ 8–24; *id.* ¶¶ 34–37 (discussing Exemption 7(A)). That explanation did not come close to satisfying the State

---

[2] The Government's revised *Vaughn* index does not correct the deficiencies in its Exemption 5 invocations, which remain impermissibly vague. For example, in the entry for Document 26, the Department invoked the attorney work product doctrine because the "withheld portions reflect the mental impressions, conclusions, opinions, or legal theories of a DOJ attorney regarding proposals for increased cooperation between the United States and Jordan on the extradition of individuals from Jordan to the United States and was prepared in anticipation of litigation of the Tamimi case." ECF No. 57-4 at 12 (Doc. 26 entry). The Court should reject this conclusory invocation of the work product doctrine. *Judicial Watch v. USPS*, 297 F. Supp. 2d 252, 268 (D.D.C. 2004) ("Though each redaction is mentioned by page number, USPS simply concludes that each redaction involves legal advice and relates to actual or potential litigation. These descriptions are not detailed enough for the court to determine meaningfully, on its own, whether these documents are privileged. Without impugning USPS's honesty, the court is not allowed to grant summary judgment based on such conclusory statements. To do so would be tantamount to shirking the court's obligation to conduct a de novo review.").

Department's burden. *Halpern v. FBI*, 181 F.3d 279, 293 (2d Cir. 1999) ("Assessed in terms of 'reasonable specificity,' the explanations read more like a policy justification for [the executive order] while barely pretending to apply the terms of that section to the specific facts at hand."); *Elec. Privacy Info. Ctr. v. CBP*, 160 F. Supp. 3d 354, 359 (D.D.C. 2016) ("The Burroughs Declaration exhibits inadequacies that courts in this Circuit have cautioned against. … [It] provides a categorical description of the material withheld, without providing any exhibits or page references to allow the Court to assess whether the defendant's claims, in context, are meritorious."); *Sciacca v. FBI*, 23 F. Supp. 3d 17, 31 (D.D.C. 2014) ("In short, the agency's declaration seems to put the cart before the horse insofar as it elaborately identifies the defendants' asserted exemptions, but neglects to provide an overall picture of the universe of documents at issue as is necessary for the court to be able to put those exemption justifications in the proper context."). Defendant is left with the argument that *Hiken* was decided in the Northern District of California, not this district (State. Opp. & Reply 4–5), but fails to cite any authority suggesting *Hiken* is inconsistent with D.C. Circuit law.

Courts have recognized that the labels an agency stamps on its redactions are, themselves, a way to communicate the agency's position to the FOIA applicant, and that those redaction labels should be read in conjunction with the agency's other submissions, like its *Vaughn* index and any declarations. For example, in *Halpern*, the Second Circuit described a document "contain[ing] a large body of redacted text accompanied by the symbol '(b)(1)–(S)(I),' referring the reader to the [] Declaration's explanation of 'Source Identifier[s]' within the larger category of 'Intelligence Source Information.'" *Halpern*, 181 F.3d at 294. The court explained that even though "[t]he context of the redacted text" contained sufficient information to "probably meet the reasonable specificity standard," the government's failure to "include [such context] in its affidavit" defeated

5

"one of the key purposes of *Vaughn* by shifting to the courts the burden to wade through pages of material in search of contextual support for the government's own redactions." *Id.* Ultimately, the Court remanded for *in camera* review. The redaction labels in this case are even less detailed than the labels in *Halpern*.

***Exemption 7(A).*** Defendant concedes that Plaintiffs "correctly state the law as to the necessary threshold holding for invoking Exemption 7." State Opp. & Reply 14–15. "First, the agency "must define [] categories [of documents] functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings." *Bevis v. Dep't of State*, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986); *accord CREW v. DOJ*, 746 F.3d 1082, 1098 (D.C. Cir. 2014).

Defendant also concedes that "it has used the same exact rationale to justify the withholding of information in each document," State Opp. & Reply 14, which flies in the face of the standard articulated above, *see Elec. Privacy Info. Ctr.*, 160 F. Supp. 3d at 359 ("categorical description of the material withheld" is insufficient); *Am. Immigration Council v. DHS*, 950 F. Supp. 2d 221, 247 (D.D.C. 2013) ("Defendants' descriptions of its withholdings under Exemption 7(E) exhibit all of the inadequacies that courts in this Circuit have cautioned against. The *Vaughn* Index groups many of the 7(E) withholdings into a single, catchall category for which no page numbers are indicated.").

*** 

As explained above, the State Department has materially changed its position with respect to entire categories of exemptions over the course of summary judgment briefing in this case. Plaintiffs respectfully submit that this has distorted the ordinary adversarial process and therefore

6

request that the Court exercise its discretion to order *in camera* review of the 34 documents at issue. *Halpern*, 181 F.3d at 295 ("[T]he district court may, in its discretion, order *in camera* review of the documents themselves.").

**II.   The Department has failed to justify its withholdings with respect to Documents 6, 7, 20, 28, and 29.**

*Document 20.*   The State Department concedes (State Opp. & Reply 14–15) that where an agency "does not specialize in law enforcement, its attempt to shield its records under Exemption 7" merits "no deference." *Bartko v. DOJ*, 898 F.3d 51, 64 (D.C. Cir. 2018).  The State Department also states that Plaintiffs "d[id] not identify any evidence that the law enforcement investigation into Tamimi ha[d] concluded—and instead repeatedly rely on speculation." State Opp. & Reply 15.  This is puzzling: Plaintiffs submitted explicit evidence—in the form of the DOJ's own press release—that the investigation had concluded. LaBerge Decl. Ex. 39 ("The investigation into this matter *was conducted* by the FBI's Washington Field Office.") (emphasis added).  Additionally, challenging Defendant's contention that a case indicted *fifteen years ago* is still under investigation can hardly be written off as mere speculation.  Perhaps this explains why, even in reply, Defendant did not submit a declaration from a DOJ prosecutor.

*Document 28.*   Document 28 is described on the Defendant's *Vaughn* index as a "draft press guidance" that was circulated on March 15, 2017.  LaBerge Decl. Ex. 28; *Vaughn* index at 13 (Document 28 entry).  Defendant asserts that it "conducted a line-by-line review" and only withheld "deliberations over relevant facts to consider prior to a final decision about the specific responses that would be shared by the State Department with the press." State Opp. & Reply 9.

7

> **NEA Press Guidance**
> **March 15, 2017**
> **Jordan: TAMIMI CHARGES**
> **(IF ASKED ONLY)**
> - We can confirm that on March 14, the U.S. Department of Justice announced that a criminal complaint was unsealed charging Ahlam Aref Ahmad Al-Tamimi with conspiring to use a weapon of mass destruction against U.S. nationals outside the U.S., resulting in death. The charge is related to the defendant's participation in an Aug. 9, 2001, suicide bomb attack at a restaurant in Jerusalem that killed 15 people, including two U.S. nationals. Four other U.S. nationals were among the approximately 122 people injured in the attack.
>
> - For further details we refer to you the Department of Justice.
>
> *Has the U.S. government / the U.S. Embassy in Amman asked the GOJ to extradite Tamimi?*
> - We do not comment on extradition requests, including whether or not one has been made.
>
> *What has the GOJ said in response?*
> - We would refer you to the Government of Jordan to address that question.
>
> *Why was the order unsealed now / why was it put under seal in the first place / further legal questions?*
> - We would refer you to the Department of Justice to address that/those questions.
>
> *Is this case going to harm the bilateral relationship if Jordan refuses to extradite Tamimi?*
> - The United States and Jordan have an enduring partnership, and we continue to work together to address a range of issues.
>
> (b)(5)

The State Department's position on this document is untenable, and at the very least, the Court should examine this document *in camera*. It is possible to tell from the face of Document 28 that the withheld information is unlikely to be deliberative. There is a box shaded in gray at the top of the document, which contains talking points that are supposed to be delivered "IF ASKED ONLY." LaBerge Decl. Ex. 28. That textual detail—"IF ASKED ONLY"—could plausibly be described as evidence of deliberation. But only the top portion of the document is qualified by the "IF ASKED ONLY" instruction. The remainder of the document appears to consist of fleshed out, settled answers to press questions. "[T]he Department's averments" (State Opp. & Reply 11) do not overcome this compelling documentary evidence. It is unclear how a bullet list of draft questions and answers "reflects the internal exchange of ideas and recommendations when Department officials are formulating a strategy for official action." *Contra id.* at 11.

The State Department's position appears to be that any draft answer to a hypothetical question from a reporter is a "final decision" within the meaning of the deliberative process privilege.  "However, information is not protected simply because disclosure would reveal some minor or obvious detail of an agency's decision making process.  Were that the test, Exemption 5 would swallow FOIA entirely.  It is difficult to imagine a document that would not divulge some tidbit regarding an agency's deliberative process." *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1228 (10th Cir. 2007) (also noting that such an "overly broad reading is contrary to [the] duty to construe FOIA's exemptions narrowly") (citing *Irons & Sears v. Dann*, 606 F.2d 1215, 1219 (D.C. Cir. 1979)).

*Document 29.*   Document 29, withheld in full, is "draft correspondence from the Department of Justice to the Government of Jordan." State Opp. & Reply 13.  The State Department's position is that the draft letter is protected by the deliberative process privilege because it "reflects a distillation of the two agencies'" views: the Department of Justice and the Government of Jordan.  However, a foreign government is not an "agency" for purposes of Exemption 5.  *Lucaj v. FBI*, 852 F.3d 541, 547 (6th Cir. 2017) ("The RFAs' recipients having failed to meet FOIA's definition of *agency*, we hold that the RFAs from the OIA to the Central Authority of Austria and the unnamed country are not inter-agency.").  Indeed, it strains credulity for Defendant to suggest that somehow the United States Government and the Government of Jordan were deliberating together to develop United States Policy regarding Jordan's violation of its treaty obligations to extradite Tamimi.

*Documents 6 and 7.*   The State Department argues that Plaintiffs' arguments about Documents 6 and 7 are "speculative."  But Plaintiffs' understanding of what has been withheld in Documents 6 and 7 comes directly from the description provided in the *Vaughn* index.  It is the

9

State Department's burden to provide descriptions and justifications for its withholdings such that Plaintiffs can meaningfully contest them.  *See King,* 830 F.2d at 218.

## CONCLUSION

For the foregoing reasons, the State's Motion for Summary Judgment should be denied, and for the same reasons, Plaintiffs' Cross-Motion for Summary Judgment should be granted.

Respectfully submitted,

By: */s/ Margaret A. Dale*
Margaret A. Dale *(pro hac vice)*
Henrique N. Carneiro *(pro hac vice)*
Proskauer Rose LLP
11 Times Square
New York, New York 10036
mdale@proskauer.com
hcarneiro@proskauer.com
Tel: (212) 969-3315
Tel: (212) 969-3993

Marielle T. LaBerge *(pro hac vice)*
Proskauer Rose LLP
One International Place
Boston, MA 02110
mlaberge@proskauer.com
Tel: (617) 526-9628


*/s/ Guy G. Brenner*
Guy G. Brenner
D.C. Bar No. 491964
Proskauer Rose LLP
1001 Pennsylvania Ave., N.W.
Suite 600 South
Washington, D.C. 20004-2533
gbrenner@proskauer.com
Tel: (202) 416-6830

*Attorneys for Plaintiffs Frimet and Arnold Roth*